In re Michael RAPPAPORT, Petitioner.*

No. 1468, Docket 77–3013.

United States Court of Appeals,
Second Circuit.

Submitted March 31, 1977.
Decided June 14, 1977.

* Retitled to conform with Rule 21 of this Court.

Richard H. Wynn, New York City (Wynn & Atlas, New York City, of counsel), for petitioner.

Before MESKILL, Circuit Judge, and MARKEY, Chief Judge, Court of Customs and Patent Appeals,** and MOTLEY, District Judge.***

MESKILL, Circuit Judge:

Michael Rappaport, who seeks writs of mandamus and prohibition in this case, was indicted in the United States District Court for the Western District of New York in January, 1976. His trial in December, 1976, ended in a hung jury and Judge Elfvin declared a mistrial. A retrial was set for January 25, 1977, but has not yet begun. The circumstances surrounding the failure to hold this second trial are the subject of this proceeding.

At his first trial, petitioner was represented by Martin Blitstein, Esq. Blitstein was admitted to the Florida Bar, but was not a member of the New York State Bar, nor was he admitted to practice before the United States District Court for the Western District of New York. Nevertheless, Judge Elfvin allowed him to try the case.[1]

In the course of the trial, Blitstein testified as a witness in his client's behalf and was questioned by a lawyer from Miami, John McDaniel, Esq. McDaniel is, like Blitstein, a member of the Florida Bar not admitted in the New York state or federal courts.

Before the second trial, two disturbing facts concerning Blitstein's professional conduct came to Judge Elfvin's attention. The first was that he was indicted in January, 1974, in the Southern District of Florida, for obstruction of justice and giving false and evasive testimony before a grand jury. His trial ended in a hung jury. After plea negotiations, he pled guilty to two counts of criminal contempt, 18 U.S.C. § 401; Fed.R.Crim.P. 42, and was fined $2,000.[2]

The second incident which came to Judge Elfvin's attention was that Mr. Blitstein had been suspended from the practice of law in Florida for 45 days, beginning in March, 1974. The suspension was incurred when Mr. Blitstein overreached his position to bilk a client out of $35,000.[3] His membership in the Florida Bar had been restored prior to Judge Elfvin's decision at issue here.

Judge Elfvin then wrote to Blitstein and invited him to explain his Florida problems. He did telephone Judge Elfvin, who states in his affidavit that Blitstein attempted to "minimiz[e]" these events. The judge also made inquiries of the Florida Bar Association and Judge Joe Eaton, who accepted Blitstein's guilty pleas to criminal contempt. Judge Elfvin also received a transcript of the guilty plea proceeding, together with a number of related documents.

** Honorable Howard T. Markey, sitting by designation.

*** Honorable Constance Baker Motley, of the Southern District of New York, sitting by designation.

1. It now appears that through an oversight, neither Blitstein nor Attorney John McDaniel, who was present throughout the trial, was formally admitted on motion. However, James Molans, Blitstein's partner, was admitted for participation in the arraignment only. In the Western District of New York, motions for admission *pro hac vice* are made orally, without supporting papers. Judge Elfvin states in his affidavit that had such a motion been made, he would have granted it.

   However, we need not decide the validity of Blitstein's "admission" *nunc pro tunc*. Admission *pro hac vice* is by definition, at most, admission for a single proceeding. An unadmitted attorney who seeks to represent a defendant upon a retrial must secure a second admission *pro hac vice*.

2. The specifications of the contempt to which Mr. Blitstein pled guilty were as follows:

   1. Martin Blitstein was in contempt of Court on April 6, 1973, in that Martin Blitstein did on that day delay the Federal Grand Jury then sitting in the Southern District of Florida.

   2. Martin Blitstein did evasively testify before the Federal Grand Jury in the Southern District of Florida on April 5, 1973.

3. The actual misconduct was that Blitstein represented that the risk of litigation was far greater than it actually was in order to inflate his fee.

After considering all of this evidence, Judge Elfvin decided not to admit Blitstein as Rappaport's attorney in the retrial. He sent telegrams to this effect to both Blitstein and Rappaport on January 18, 1977. In a telephone conversation with McDaniel that day, Judge Elfvin was asked if there was any method for review. He suggested that the petitioner might seek a writ of mandamus.

The petitioner repeatedly stated that he would do so. In each instance, Judge Elfvin delayed the start of the trial to await the anticipated petition and ruling. Finally, on March 18, the petition was actually filed. The petitioner now seeks, in addition to the writ of mandamus, a writ of prohibition directing Judge Elfvin not to try Rappaport at all. The reason alleged is that the extended delay before the retrial violates the Speedy Trial Act and the Sixth Amendment. We deny both applications for relief.[4]

## I.

■ Of course, admission to the Bar of one state does not carry with it the right to practice law anywhere else. *Hawkins v. Moss*, 503 F.2d 1171 (4th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975); *see In re Stolar*, 401

U.S. 23, 33, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) (Blackmun, J., dissenting). The same is true of admission to the district courts of the United States.[5] *See Lark v. West*, 110 U.S.App.D.C. 157, 289 F.2d 898, *cert. denied*, 368 U.S. 865, 82 S.Ct. 114, 7 L.Ed.2d 63 (1961); Note, Retaining Out-of-State Counsel: The Evolution of a Federal Right, 67 Colum.L.Rev. 731, 738 (1967).

However, most, if not all, federal courts allow for the admission of attorneys *pro hac vice*; that is, an attorney from another jurisdiction will be admitted to present only one matter. This is provided for in the Supreme Court of the United States, *Dennis v. United States*, 340 U.S. 887, 71 S.Ct. 133, 95 L.Ed. 644 (1950); in our Court, Second Circuit Rule 46(d); and by every district court in our Circuit.[6] The relevant rule of the Western District of New York is Rule 2(d).[7] This privilege was extended to Blitstein at Rappaport's first trial, although no formal motion was made at that time.

■ Just as with a regularly admitted attorney, one seeking admission *pro hac vice* is subject to the ethical standards and supervision of the court. *See* Note, Retaining Out-of-State Counsel: The Evolution of a Federal Right, 67 Colum.L.Rev. 731 (1967); Note, Attorneys: Interstate and

**4.** Rappaport raises Blitstein's rights as well as his own, which is usually not permitted. The right to counsel of one's choice is crucial and is inextricably bound up with the lawyer's right to appear. In view of our disposition here, we assume without deciding that this claim of *jus tertii* can be considered by this Court. *See* Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599, 649 (1962).

**5.** In this Circuit, an out-of-state lawyer of good character has the right to appear in a district court to present a federal claim or defense, if he is associated with local counsel. Representing a criminal defendant in federal court clearly comes within this category. *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169–70 (2d Cir.) (*en banc*), *cert. denied*, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966). In the Third Circuit, there is authority to the effect that out-of-state counsel must be admitted *pro hac vice* in a criminal case. *United States v. Bergamo*, 154 F.2d 31 (3d Cir. 1946). Even if we were to adopt this rule, it applies only "in the absence of some showing that he lacked the qualifica-

tions necessary for the performance of his duties as defense counsel." *United States v. Bradford*, 238 F.2d 395, 397 (2d Cir. 1956), *cert. denied*, 356 U.S. 927, 78 S.Ct. 717, 2 L.Ed.2d 759 (1958).

**6.** *See* General Rules, Southern and Eastern Districts of New York, § 3(c); General Rules, Northern District of New York, § 2(e); Rules of Civil Procedure, District of Connecticut, § 2(e); Rules of Civil Procedure, District of Vermont, § 12(E).

**7.** The text of Rule 2(d) is as follows:

A member in good standing of the bar of any state, or of any United States District Court, may upon motion of an attorney of this court be permitted to argue or try a particular cause in whole or in part as counsel or advocate. Only an attorney or proctor of this court may enter appearances for parties, sign stipulations or receive payments upon judgments, decrees or orders.

Federal Practice, 80 Harv.L.Rev. 1711 (1967). The determination of these issues is necessarily in the hands of the judge presiding over the trial.

When Judge Elfvin learned of Blitstein's difficulties in Florida, he was understandably concerned. Throughout these proceedings, the judge has been scrupulously fair. He invited Blitstein to respond to the charges made against him, an opportunity which was taken. He also allowed the defendant to appear and ask for Blitstein's reinstatement. When he decided not to admit Blitstein, the judge allowed ample time to obtain other counsel, and offered to assist in the search. Finally, Judge Elfvin, after discussing with McDaniel the possibility of a writ of mandamus, has patiently awaited the result.

■ The fact that Blitstein has not been disbarred in Florida does not control the outcome of this case. The federal courts are not bound by state disciplinary rulings, but must reach their own judgments in these matters. *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). It is appropriate for the district court to look to the disciplinary standards applicable to most members of its Bar, in this case those of New York. *Petition of Merry Queen Transfer Corp.*, 269 F.Supp. 812 (E.D.N.Y.1967) (Weinstein, J.). We note that the courts of New York have approved disbarments after convictions of giving false testimony before a grand jury. *In re Kaufman*, 46 A.D.2d 489, 363 N.Y.S.2d 324 (1st Dept. 1975); *In re Ruggiero*, 40 A.D.2d 135, 338 N.Y.S.2d 749 (1st Dept. 1972). *See In re Castellano*, 46 A.D.2d 792, 361 N.Y.S.2d 23 (2d Dept. 1974) (censure

after federal conviction of contempt for disrespect in court). The same sort of overreaching on a contingent fee engaged in by Blitstein has been the basis of a one-year suspension. *Westchester County Bar Ass'n v. St. John*, 43 A.D.2d 218, 350 N.Y.S.2d 737 (2d Dept. 1974).

Finally, we note that, when an attorney enters a guilty plea, the New York courts will look to the underlying crimes charged against him. *Turco v. Monroe County Bar Ass'n*, 46 A.D.2d 490, 363 N.Y.S.2d 349 (4th Dept.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975). In this case, the judge who presided at Blitstein's trial, on serious felony charges, stated to Judge Elfvin that the case was sufficient to send to the jury. Thus, the indictment dismissed after Blitstein's guilty pleas was substantially more than a set of unsupported allegations.

■ Mandamus lies only to correct an abuse of discretion.[8] Here, the proceedings have carefully protected the rights of the defendant and his lawyer, and the decision not to admit Blitstein was amply supported by uncontradicted evidence. Since Judge Elfvin acted well within his discretion, the petition must be denied.[9]

### II.

There is an additional important reason, not advanced by respondents, why Judge Elfvin's order must stand. At the first trial, Blitstein testified in Rappaport's behalf.[10] In a memorandum prepared by Blitstein's firm, the testimony was described as "crucial." The memorandum makes it clear that Blitstein anticipated the need for this testimony.[11]

---

**8.** In the Fifth Circuit, an on-the-record hearing is required before a district court can deny admission *pro hac vice*. *In re Evans*, 524 F.2d 1004 (5th Cir. 1975). *Compare Thomas v. Cassidy*, 249 F.2d 91 (4th Cir. 1957), *cert. denied*, 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958). However, there is an exception in that Circuit to the hearing requirement when there is no dispute as to the material facts. *United States v. Dinitz*, 538 F.2d 1214, 1223–24 (5th Cir. 1976) (*en banc*). That is certainly the case here. Moreover, the procedures employed by

Judge Elfvin did, in fact, create a reviewable record.

**9.** Finally, we note that delay in seeking mandamus may itself prove fatal to the petition. *United States v. Olds*, 426 F.2d 562 (3d Cir. 1970).

**10.** When Blitstein testified, he was questioned by McDaniel.

**11.** There appears to be a possibility that the need for Blitstein's testimony will be obviated if

 In every state in this Circuit, it is unethical conduct for a lawyer to participate in a trial both as counsel and witness. New York State Bar Ass'n, Code of Professional Responsibility Canon 5, EC5–9, EC5–10; Connecticut Practice Book, Part I, Canons of Professional Ethics, Canon 19; Vermont Statutes Annotated, Title 12, App. IX, Rule XXI (Supp.1975). This Court has previously indicated its approval of these rules. *J. P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357 (2d Cir. 1975).

For Blitstein to have represented Rappaport at the first trial, when he knew of the dual role he would play, further supports Judge Elfvin's evaluation of Blitstein's fitness to practice in his court. However uncertain it may have been at the first trial, it is now highly probable that Blitstein will be a witness in the retrial. Under these circumstances, it would be improper for Blitstein or anyone associated with him to represent Rappaport.

### III.

The speedy trial claim merits only brief discussion. Virtually all of the delay in bringing Rappaport to trial was caused by his repeated representations that a petition for a writ of mandamus was imminent. Each time, Judge Elfvin delayed the start of the trial, in order to protect the defendant's rights. At no time was a demand for speedy trial made. To the contrary, the defendant has consistently maintained throughout these proceedings that his trial cannot begin unless Blitstein is seated at the counsel table.

The defendant was not deprived of any rights by the delay. The time expended in motions and applications for extraordinary relief is excluded from the computation of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(D), (E); Western District Speedy Trial Plan § 10(a). Nor was the defendant deprived of his Sixth Amendment rights. In *Barker v. Wingo*, 407 U.S.

514, 528–30, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set out the four factors to be considered in a Sixth Amendment claim. These are the length of the delay; the reason for it; whether or not the claimant has asserted his speedy trial rights; and the resulting prejudice. It is clear that Rappaport fails to meet any one of these tests.

We have previously warned that "the right to counsel cannot be manipulated so as to interfere with the fair administration of justice." *United States v. Bentvena*, 319 F.2d 916 (2d Cir.), *cert. denied*, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). Petitioner's attempt to bootstrap himself into a speedy trial claim is an attempt at such manipulation.

The petitions for writs of mandamus and prohibition are denied.[12]

---

a government witness can be deposed. An attempt to secure such a deposition at the first trial failed.

**12.** Petitioner also applied for a stay pending resolution of these petitions. This application is moot.