[No. 4392–II.   Division Two.   January 15, 1982.]

JOE HALLMANN, ET AL, *Petitioners,* v. STURM RUGER
& COMPANY, INC., ET AL, *Respondents.*

*Bryce H. Dille,* for petitioners.

*Stuart P. Hennessey,* for respondents.

PETRICH, J.—This matter is before this court on petition
of the plaintiffs, Joe and Debbie Hallmann, for discretion-
ary review of an order of the Superior Court revoking per-
mission of one of their attorneys to appear pro hac vice. We
are asked to find the Hallmanns' attorney was deprived of

due process because he did not receive prior notice the trial court intended to revoke permission nor was he advised of the reasons why the intended action might be taken. We are also asked to find the trial court abused its discretion when it revoked permission without evidence the attorney had been guilty of misconduct or professional incompetence, or that his participation resulted in substantial delay of the proceedings. We think the attorney should have received prior notice of the court's intention to revoke permission and the reasons therefor, and been given an opportunity to respond. We therefore reverse and remand.

The Hallmanns brought a products liability suit against Sturm Ruger & Co., Inc., a gun manufacturer. Shortly thereafter, on June 10, 1977, H. Bixler Whiting, a member in good standing of the Alaska Bar, was admitted as associate counsel for plaintiffs pursuant to APR 7. Mr. Whiting also represented other plaintiffs in other jurisdictions in similar actions against Sturm Ruger. Sturm Ruger was represented by cocounsel from another state.

In February 1979, Sturm Ruger unsuccessfully moved for an order revoking Mr. Whiting's permission to appear pro hac vice, on the grounds his remote location was causing severe scheduling problems, and he continually interjected facts and law from other pending cases, to the prejudice of Sturm Ruger.

In September 1979, the parties came before the trial court on the Hallmanns' motion for summary judgment and their second motion for sanctions. The motion for sanctions related to the deposition of Mr. Hillberg, an expert witness. Months earlier, the trial court had ruled Mr. Hillberg's deposition could be taken in conjunction with the same deposition to be taken in pending cases in other jurisdictions, and without restriction as to questions to be asked. At the motion for sanctions, the parties argued at length whether Sturm Ruger obstructed the deposition of Mr. Hillberg. At the close of argument, the trial court, on its own motion, barred both out-of-state counsel from further participation in the case, stating that problems in the

instant case arose because of the comingling of the Hall-mann case with cases pending in other jurisdictions. The court also criticized Mr. Whiting for the length of his briefs and his practice of citing law from other jurisdictions which the court thought was not applicable. The Hallmanns' motion for reconsideration was denied.

We turn first to the Hallmanns' contention that Mr. Whiting was denied due process because permission was revoked without prior notice of the court's intended actions or the reasons therefor.[1] While we do not think Mr. Whiting had any constitutional or statutory right to notice and hearing, we think these steps should have been taken for policy reasons.

The rule is that an attorney has no right under the United States Constitution to appear pro hac vice. Any protected interest Whiting may have, must stem from an independent source such as state law. *Leis v. Flynt,* 439 U.S. 438, 58 L. Ed. 2d 717, 99 S. Ct. 698 (1979). Admission of out–of–state attorneys to practice is regulated by APR 7.[2] This rule has not been interpreted to create a right to

---

[1]Although the Hallmanns are the sole petitioners, they can assert Mr. Whiting's rights. It is the general rule that a person may not assert the rights of another. Where, however, the "interest of the two sets of people are inherently interrelated", a person may assert the rights of another. *Johnson v. Trueblood,* 629 F.2d 302, 303 (3d Cir. 1980), *cert. denied,* 450 U.S. 999, 68 L. Ed. 2d 200, 101 S. Ct. 1704 (1981). Here, the interests of Mr. Whiting and the Hallmanns are inherently interrelated. The Hallmanns also contend it is essential that Mr. Whiting represent them if they are to be afforded the best legal representation available.

[2]APR 7 provides in part:
"(a) **In General.**
"(1) No person shall appear as attorney or counsel in any of the courts of this state, unless he is an active member of the state bar: Provided, that a member in good standing of the bar of any other state who is a resident of and who maintains a practice in such other state may, with permission of the court, appear as counsel in the trial of an action or proceeding in association only with an active member of the state bar, who shall be the attorney of record therein and responsible for the conduct thereof and shall be present at all court proceedings.
"(2) Application to appear as such counsel shall be made to the court before whom the action or proceeding in which it is desired to appear as counsel is pending. The application shall be heard by the court after such notice to the

appear nor do we so interpret it now.

Admission is left to the discretion of the trial judge; however, discretion is substantially limited. *Hahn v. Boeing Co.,* 95 Wn.2d 28, 621 P.2d 1263 (1980). In defining the scope of discretion to be afforded the trial court in evaluating an application to appear pro hac vice, the court in *Hahn* looked to the purpose of APR 7 and the interests of the trial court, the client, and opposing counsel. The court held all three could be protected if inquiries were limited to "matters which would warrant disqualification, were the attorney a member of the local bar, or which would justify discipline under the court's contempt powers." *Hahn v. Boeing Co., supra* at 35. We believe these same interests and inquiries should define the court's discretion to revoke permission.

The trial judge has a responsibility to administer justice and to insure that order is maintained in the litigation. He must have the measure of discretion to take steps to carry out his responsibility. *United States v. Dinitz,* 538 F.2d 1214 (5th Cir. 1976), *cert. denied,* 429 U.S. 1104, 51 L. Ed. 2d 556, 97 S. Ct. 1133 (1977). An attorney admitted to appear pro hac vice is subject to the ethical standards and supervision of the court. *In re Rappaport,* 558 F.2d 87 (2d Cir. 1977). The court can control an attorney's acts through its power of contempt, *e.g., Johnston v. Beneficial Management Corp. of Am.,* 26 Wn. App. 671, 614 P.2d 661 (1980); and it has the power to remove attorneys when the facts warrant removal. *Pantori, Inc. v. Stephenson,* 384 So. 2d 1357 (Fla. Dist. Ct. App. 1980).

The clients have an interest in retaining the attorney of their choice. *Johnson v. Trueblood,* 629 F.2d 302 (3d Cir. 1980). *See also* Code of Professional Responsibility EC 3–9. Their interest must be balanced with the court's responsi-

---

adverse parties as the court shall direct; and an order granting or rejecting the application made, and if rejected, the court shall state the reasons therefor.

"(3) No member of the state bar shall lend his name for the purpose of, or in any way assist in, avoiding the effect of this rule."

bility to insure order. The clients' interests are especially important where, as in this case, the litigation had been proceeding for more than 2 years and the discharged attorney had actively participated in the discovery stage.

The opposing counsel has an interest in his ability to proceed with the litigation without scheduling complications resulting from the geographical remoteness of the out–of–state counsel, or other interferences resulting from participation of an out–of–state attorney.

We believe these competing interests can best be protected if inquiry is limited to whether the acts of the attorney violate the Code of Professional Responsibility, or are contemptuous of the court or adversely affect the conduct of the litigation. In these instances, revocation of permission may be proper. *Cf. Hahn v. Boeing Co., supra* (court equated denial of permission to appear pro hac vice with disqualification of the attorney, citing with approval cases where permission had been revoked for acts contemptuous of court or adversely affecting the conduct of the trial).

█ The next question to be resolved is what procedures should be followed when a trial court, on its own motion or at the request of a party, is considering revocation of an attorney's pro hac vice status. We believe that notice and an opportunity to respond are necessary. In *Johnson v. Trueblood, supra* at 303, permission to appear pro hac vice was revoked because the actions of the attorney disrupted the functioning of the court and violated the Code of Professional Responsibility. Permission was revoked without prior notice or an opportunity to respond; all acts relied on by the court were committed in the court's presence. On appeal the court held that notice and an opportunity to respond are necessary for two reasons:

> First, although at one time pro hac vice status was considered to be granted and held at the grace of the court, we believe that in this era of interstate practice of law, such a notion cannot be applied too literally or strictly. Second, some sort of procedural requirement serves a number of salutary purposes. It ensures that the attor-

ney's reputation and livelihood are not unnecessarily damaged, protects the client's interest, and promotes more of an appearance of regularity in the court's processes.

We think the reasoning in *Johnson v. Trueblood, supra,* is sound. We hold then that an attorney must be notified of the conduct the court will rely on to revoke, and the specific reason, preferably in writing, why the conduct may justify revocation. The attorney must be given a meaningful opportunity to respond although a full scale hearing is not required.

Turning to the facts of this case, the trial court revoked permission without prior notice after hearing argument on the Hallmanns' motion for sanctions concerning the Hillberg deposition.[3] The court was understandably concerned that Mr. Whiting was comingling the Hallmann case with cases pending in other jurisdictions by his attempts to consolidate discovery in these actions. This, coupled with Mr. Whiting's lengthy memoranda in support of various motions which in the court's mind contained irrelevant authority from other jurisdictions, created what the court termed a "monstrosity" of the Hallmann case. The court also suggested Mr. Whiting may have engaged in misconduct in his discovery techniques relating to the subpoena of certain records. Even with these references, we think the present record is inadequate for us to review whether the trial court's actions were justified under the standards we have enunciated.

We leave to the trial court's review whether Mr. Whiting's conduct was violative of the Code of Professional Responsibility, such as DR 1–102(A)(5), DR 7–102, or DR 7–106, or whether the acts unlawfully interfered with the proceedings, or otherwise constituted contempt of court. *See* RCW 7.20.010.

It may be Mr. Whiting's conduct so adversely affected

---

[3]The court heard the Hallmanns' motion for reconsideration of the order revoking permission. We do not think this hearing satisfied the requirements of prior notice and hearing.

the conduct of the litigation that revocation of permission was warranted. We are troubled, however, if revocation was based on the complications which arose from the consolidation of discovery with other pending cases in view of the fact the trial court originally allowed the consolidation. If the trial court indeed relied on what it thought were lengthy and misleading briefs, we are again troubled by the lack of censure of the Hallmanns' local attorney who also signed the pleadings. *See* CR 7(b)(2), 11.

While we are sympathetic to the trial court's dilemma as to how to remedy the complications which arose in the litigation, we believe this determination should again be reviewed by the trial court in accordance with the process and standards enunciated above. The trial court's order revoking Mr. Whiting's pro hac vice status is reversed and this matter remanded for further proceedings consistent with this opinion.

REED, C.J., and PEARSON, J., concur.