**UNITED STATES**

v.

**Jorge A. GOMEZ and Jaime Gomez.**

**Cr. No. 84–0017–S.**

United States District Court,
D. Rhode Island.

April 18, 1984.

Lincoln C. Almond, U.S. Atty., James H. Leavey, James E. O'Neill, Asst. U.S. Attys., Providence, R.I., for plaintiff.

Bevilacqua, DeSimone & Gosz, Joseph J. Bevilacqua, Jr., Providence, R.I., for defendant Jorge Gomez.

John H. Ruginski, Jr., Providence, R.I., for defendant Jaime Gomez.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This single-count indictment, returned by a federal grand jury on March 19, 1984, charges the defendants, Jorge A. Gomez (Jorge) and Jaime Gomez (Jaime), with knowingly and intentionally possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The ten ounces of cocaine which triggered these charges were discovered and seized after a fire had broken out in an apartment which the government alleges was occupied by the brothers Gomez.

Within a week's time next following the handing-up of the true bill, John H. Ruginski, Jr., Esq., a member of the bar of this court, entered his appearance for Jaime. Immediately thereafter, the government moved to disqualify Ruginski from such service. An evidentiary hearing on the disqualification motion was held on Friday, April 13. Decision was reserved.

Ruginski was the sole witness at the hearing. His testimony is susceptible to succinct summarization. On February 23, 1984, acting in his capacity as counsel for both Jorge and Jaime, Ruginski accompanied the brothers to the Central Falls police station. His reason for doing so was his awareness that an arrest warrant for Jaime was outstanding.

Ruginski was in a position to observe if either individual manifested visible after-effects of the fire.[1] He admitted that he had seen Jorge's facial burns soon after the incident, but claimed not to have noticed whether or not Jaime's hands were similarly blemished. After an initial discussion with Detective White of the Central Falls police, Ruginski made it known that Jorge wished to make a voluntary statement. Since there was considerable dubiety as to Jorge's command of the English language,[2] and since no one was eager to await the arrival of a professional translator,[3] it was agreed that Ruginski (who was fluent in the Spanish language) would act as an interpreter. Ruginski translated the waiver-of-rights form (Exhibit 1) for Jorge, obtained his assent thereto, and witnessed his signature. He also served as the interpreter for Jorge's ensuing confession (Exhibit

---

1. The suggestion is made by the government, albeit obliquely, that singed flesh would tend to prove presence at the dwelling when the conflagration erupted; and thereby, tie the marked individual(s) more tightly into the contraband.

2. Ruginski, at the hearing, described Jorge's grasp of English as "rudimentary."

3. The evidence suggests, *inter alia,* that Ruginski had to appear that day at a state court in connection with an unrelated matter, and wanted to be on his way. To quote the attorney: "Time was a consideration."

2), typed the final version in English, and translated it into Spanish while reading it back to Jorge. After Jorge approved the content and executed the document in Ruginski's presence, the lawyer signed it on the line indicating that he was the person by whom the statement had been taken. Ruginski claimed that he undertook these actions "as a favor for the Central Falls police."

On the same date, Ruginski also observed Jaime's signing of a comparable waiver form and subscribed that form as a witness; but, there is no indication that Jaime required—or that Ruginski served as—an interpreter. The police allege that Jaime spoke with them thereafter, but Ruginski disclaimed knowledge of any such conversation.

Shortly before Jaime's arraignment on March 26, Ruginski received the sum of $10,195. from him in small bills, which Ruginski deposited in an account at the Equitable Credit Union (not a financial institution regularly used by Ruginski). The account was in the joint names of the lawyer and a female acquaintance of Jaime.

Ruginski had never, prior to the occurrence of these events, represented Jorge; he had, however, acted as Jaime's counsel during the previous year in connection with (i) post-conviction proceedings in an unrelated state criminal prosecution, and (ii) an ongoing problem with the Immigration and Naturalization Service.

The gravamen of the government's disqualification motion is that Ruginski's continued service as Jaime's counsel is inappropriate in that he is a "necessary witness" whom the prosecution intends to call "against both Jorge A. Gomez and Jaime Gomez." In the first instance, the motion calls into play Model Code of Professional Responsibility DR 5–101, which provides as follows:

> Refusing Employment When the Interest of the Lawyer May Impair His Independent Professional Judgment.—(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

> (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

> (1) If the testimony will relate solely to an uncontested matter.

> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

Jaime opposes the motion, arguing that the prosecution's demand infringes impermissibly upon his constitutionally-protected due to have "the Assistance of Counsel for his defence." U.S. Const., amend. VI. But, while "the high ground of constitutional privilege", *Marcello v. Regan*, 574 F.Supp. 586, 596 (D.R.I.1983) rises majestically from the landscape of the defendant's logomachy, the precise contour of the terrain which the accused has staked out here is amphiplatyan.

■ This court is mindful of the salubrious guarantees inherent in the Sixth Amendment right to counsel; and, under ordinary circumstances, an accused's choice in the selection of counsel should not be disturbed. Yet, although the prerogative of a defendant to be represented by his privately-retained counsel is surely "a right of constitutional dimension," *United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24

L.Ed.2d 76 (1969), it is not an absolute. "An accused's right to select his own counsel ... cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *United States v. Cortellesso,* 663 F.2d 361, 363 (1st Cir.1981), quoting *United States v. Bentvena,* 319 F.2d 916, 936 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). As Judge Aldrich has incisively written, "it is inconceivable that defendant's right to a particular counsel should be permitted to impose [substantial] artificial disadvantages upon the government." *Cortellesso,* 663 F.2d at 363. In fine, "[a] defendant's right to obtain counsel of his choice must be balanced against the need for efficient and effective administration of criminal justice." *United States v. Weninger,* 624 F.2d 163, 166 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

When such a balance is struck in the case at bar, the scales tip heavily in favor of the government.

■ The canons of ethics, *see* text *ante,* plainly indicate that the dual roles of counsel and witness are, in the main, mutually exclusive; and courts have consistently deplored such double service. *E.g., United States v. Cunningham,* 672 F.2d 1064, 1074–75 (2d Cir.1982); *Cortellesso,* 663 F.2d at 363; *In re Rappaport,* 558 F.2d 87, 91 (2d Cir.1977). As Ethical Consideration 5–9 of the ABA Code of Professional Responsibility, quoted with approbation by the Second Circuit in *Cunningham,* 672 F.2d at 1074, expostulates:

> If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility.

Put most simply, "the roles of advocate and witness are fundamentally incompatible." *J.D. Pflaumer, Inc. v. United States Department of Justice,* 465 F.Supp. 746, 748 (E.D.Pa.1979).

■ The case at bar aptly illustrates the point. The government has signified its intention to use at trial both Jorge's confession and certain "oral admissions" allegedly made by Jaime. Certainly Ruginski, with his eyes wide open, has placed himself in the position of being the prosecution's best witness as to the knowing and voluntary waiver by both defendants of their respective rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny. And, as to Jorge's confession, Ruginski is the key to the accuracy of its translation into the English language and its acknowledgement by the accused. It is apparent that the voluntariness of both sets of statements will be contested. On April 13, Jorge filed a motion to suppress "any and all statements made to the Central Falls police department" (presumably including the confession), alleging, *inter alia,* that the same were obtained in contravention of his rights under the Fifth and Sixth Amendments. And, on the same date, Jaime likewise moved to suppress his parol statements, averring disregard of his constitutional rights on the same occasion.

While Ruginski contends that the United States could prove the waivers through White (eliminating the conflict, in Ruginski's view), there is no reason to shackle the prosecution in such a restrictive manner.[4] The First Circuit has flatly rejected the notion that evidence must be "unobtainable from other sources," *United States v. Crockett,* 506 F.2d 759, 760 (5th Cir.), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975) (dictum), before an aspiring defense counsel can be summoned as a government witness, holding specifically

---

**4.** Ruginski's suggestion that White, because of police service in a community with some hispanic residents, must have "picked up enough Spanish" to testify as to the confession as well borders on the oligophrenic.

that, in such circumstances, the United States is "not required to accede to this truncation of its evidence ... if it means that the government must settle for less than its best evidence." *Cortellesso*, 663 F.2d at 363.

Moreover, there are other factors in this case which militate against Ruginski's participation at the trial. He is, as hereinabove mentioned, an eye-witness to the physical condition of both defendants; and his original representation of the Gomez brothers, jointly, raises questions (as yet unasked and unanswered on this meagre record) as to the propriety of his advocacy on Jaime's behalf, at least in the absence of some suitable assurance that privileged information which he received from Jorge will not be used to the latter's detriment. *See Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). And, his singular knowledge of Jaime's lightning-like discovery of a large sum of cash, in small bills,[5] coupled with Jaime's testimony inconsistent with his possession of any such stash at a February 23, 1984 *Nebbia* hearing,[6] has prompted the prosecution to advise that Ruginski's testimony will be necessary on this point as well. Although not as indisputably relevant as the waivers and the confession, the prosecution's theory that the sudden and unexplained acquisition by Jaime of a substantial cache of small bills is admissible as evidence of his suspected narcotics trafficking is not so far-fetched that it can be ignored in constructing the disqualification balance. *See, e.g., United States v. Barnes*, 604 F.2d 121, 147 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Magnano*, 543 F.2d 431, 437 (2d Cir.1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977); *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

A further element to be considered is Jaime's lack of any particularized need for Ruginski's services. This is not a case such as *United States v. Cunningham, supra*, where an extensive and well-documented historical record makes the accused's claim upon a particular lawyer so specially strong that "disqualification ... would not merely defeat [the defendant's] abstract right to be represented by counsel of his choice; [but] it could subject him to real prejudice in this criminal prosecution." *Id.* at 1071. Nor, as in *Cunningham*, is "the government's interest in disqualifying [the lawyer], on the other hand, relatively weak, ..." *Id.* Ruginski's prior representation of Jaime has been, from aught that appears, neither long in duration nor fraught with intensity, neither crowned by success nor in any way related to these proceedings. In the parlance of DR 5-101(B)(4), quoted *ante*, there is no reason to suspect that the attorney's engagement is of "distinctive value" to this client. And, the government has not slept upon its perceived rights, but has raised the issue of Ruginski's status at the earliest possible moment. As a result, the case has hardly begun. There is no credible reason to believe that Jaime's legitimate interests cannot be protected by some other lawyer of his choosing, with no built-in loss of efficacy.

Nor is Ruginski's suggestion that the indictment be severed a panacea for the ills which presently infect the process. While an order granting separate trials to Jorge and Jaime, see Fed.R.Crim.P. 14, would admittedly lessen the need for Ruginski's testimony, it would not completely dispel that need. Even apart from obvious questions such as the admissibility of Jorge's statements at Jaime's trial, *e.g.*, Fed.R. Evid. 801(d)(2)(E), the court would still be left with Ruginski's personal knowledge of Jaime's *Miranda* waiver; his eye-witness testimony as to the presence or absence of

---

**5.** Ruginski's disclosure that Jaime was the source of this fund was made gratuitously by him to a United States Magistrate and an assistant United States Attorney at Jaime's arraignment on March 26, 1984.

**6.** *See United States v. Nebbia*, 337 F.2d 303 (2d Cir.1966).

**1190**

burns; and the government's *Barnes* argument.

It is apodictic that, "where defense counsel's testimony is important to the government's case, the best alternative is for counsel to withdraw." *Grady v. United States*, 715 F.2d 402, 404 (8th Cir.1983). For the due protection of the rights of the government and the basic interests of the defendants, and in order to assure both the implementation and the appearance of justice, the court is constrained to find that Ruginski's participation *qua attorney* in the trial of this cause is contraindicated. While the court respects Jaime's preference as to counsel, there are paramount considerations here. And, despite Ruginski's impassioned asseverations that his factual knowledge is incidental and peripheral only, the guideposts in the record point in an opposite direction. What Ruginski visualizes as the harmless seeds of trivial involvement have the potential, in this court's view, of sowing the field for an horrific harvest. There is an unacceptably high risk that justice—both in actuality and in its public perception—may be compromised should Ruginski continue simultaneously to labor in the disparate vineyards of testimony and of advocacy. In such straitened circumstances, fairness requires that the prosecution's motion to disqualify be granted.

In so doing, however, the court sees no manifest necessity to extend the parameters of this order beyond direct participation in the trial proper. Jaime need not be totally cut off from the perceived benefits of Ruginski's counsel. Ruginski may (i) continue to handle pre-trial discovery and pre-trial motions for his client, (ii) engage in Fed.R.Crim.P. 11 plea negotiations on Jaime's behalf; (iii) represent Jaime at pre-trial and chambers conferences, and (iv) participate fully in sentencing and post-trial matters in the district court, should the same come to pass.[7] Ruginski may not, however, participate in the conduct of jury empanelment or of the trial itself, nor may he be seated at counsel table. Jaime may, in the event of any material change in circumstances by reason of the granting of pre-trial motions to suppress or the like, request reconsideration of this ruling at any time.

*It is so ordered.*

---

7. The extent of Ruginski's involvement on appeal, should one ensue, is, of course, left to the

discretion of the Court of Appeals.