# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 1501 FIRST AVENUE SOUTH LIMITED PARTNERSHIP, a Washington limited partnership; and HOME PLATE CENTER LIMITED PARTNERSHIP, a Washington limited partnership, | DIVISION ONE <br><br> No. 79861-8-I <br><br> UNPUBLISHED OPINION |
| Respondents, | |
| v. | |
| DOUGLAS LITOWITZ, | |
| Petitioner, | |
| ERIC J. BRANFMAN REVOCABLE TRUST; XIAOYU CAI; JIAQI CHEN; HONG DAI; EJB ROTH LLC; EJB TRADITIONAL LLC; YUYAN FANG; RONGXIANG FENG; JAIME MICHAEL FINK REVOCABLE TRUST; JEROME A. FINK; PENSCO TRUST CO. FBO JEROME A. FINK; JIANFENG HU; JEROME A. FINK FOUNDATION; MAHMOUD KHANPOUR-ARDESTAN; CHENG LI; WEITAO LI; ZEHONG LI; BOXIONG SHEN; KENTA TAMAHIRO; XIAOCHUN TANG; JIONG WANG; QI HAO WU; YANLING XU; HONG YAN; YAN YIN; MING ZHAO; JINRU ZHOU; and LIANG ZHOU, | |
| Defendants. | |

DWYER, J. — The cause of this litigation is a dispute between two limited partnerships and several dissenters to the partnerships' merger.  However, this

Citations and pin cites are based on the Westlaw online version of the cited material.

appeal concerns not the merger or dissents thereto but, rather, the trial court's denial of a motion for limited admission of an attorney pro hac vice. That attorney, Douglas Litowitz, sought and was granted discretionary review of the trial court's decision. On the sole basis that the trial court failed to enter findings of fact and conclusions of law setting forth its reasons for denying the motion, as is required by our Admission and Practice Rules, we reverse.

I

1501 First Avenue South Limited Partnership (1501 First) was a Washington limited partnership until 2018, when it merged with and into Home Plate Center Limited Partnership (Home Plate) (collectively, the Partnerships). Pursuant to Washington's Uniform Limited Partnership Act, chapter 25.10 RCW, 1501 First distributed to its limited partners a confidential offering memorandum setting forth the details of the merger, the rights of dissenters, and options for how to proceed. As required by RCW 25.10.851(d), the memorandum provided a deadline by which dissenters' payment demands had to be received. Certain limited partners of 1501 First dissented from the merger and, unsatisfied with the Partnerships' estimates of the fair value of their partnership interests, provided their own estimates.

In making these communications, 1501 First relied on Robert Over as its outside counsel. One group of dissenting shareholders (Dissenters) chose to retain an Illinois attorney, Douglas Litowitz, in addition to its in-state counsel, Moshe Admon. Upon distribution of the initial offering memorandum, Litowitz telephoned Over, proceeding to tell him that 1501 First's principal was a

2

"fraudulent fuck," that 1501 First "was going to fucking pay these limited partners everything," and that Over "had better fucking sleep with one eye open, because I'm fucking coming after you." This tone, later conceded by Litowitz to be overly aggressive, persisted in electronic communications between the two attorneys as Litowitz deemed Over a "LIAR" and stated that he was "going back to the [state] bar and will pull [Over's] license." Litowitz also stated his intent to use the litigation process as a vehicle to harass the Partnerships:

> I will of course be talking to [1501 First's bank and principals]. All the way down to associates, litigants, ex-wives, and anyone else. If [the bank] knew that [1501 First's general partner] was using their money to lowball the dissenters, it is lender liability, so I will reach out to them.

> I guess it will keep you busy!

> See what they say. Some people won't do anything till a Court forces them and they can't be shamed or have a conscience as a guide. They have roiled [sic] the dice before and lost, it doesn't seem to bother them.

> In another electronic communication, Litowitz stated that he would "GO TO THE BAR AND THE PRESS." He followed through on both threats. As to the bar, he filed an unsubstantiated bar complaint with the Washington State Bar Association alleging that Over engaged in ex parte communications with his clients.[1] As to the press, he shared details of the confidential offering memorandum with the Puget Sound Business Journal. Litowitz and several of his clients also refused to accept service of payments and required statutory disclosures; when pressed, Litowitz said this was "not [his] problem."

---

[1] While the complaint was promptly dismissed, it was revisited after Litowitz made further allegations of ex parte communication between Over and his clients. A final determination on the complaint has been stayed pending the outcome of the underlying litigation.

3

The failure to reach an agreement on the fair value of the limited partners' interests led 1501 First and Home Plate to file a petition for fair value determination in superior court. RCW 25.10.881. In addition to petitioning for a determination of fair value, the Partnerships asserted a second cause of action for fees, costs, and expenses incurred in responding to Litowitz, owing to his conduct up to that point in the proceeding. Dissenters moved to dismiss this second cause of action, pursuant to CR 12(b)(6).

However, at no point in this proceeding was Litowitz admitted to practice law in Washington. In January, the date of February 15, 2019 was agreed to by all parties for a hearing on Dissenters' motion to dismiss. However, Admon did not file a motion for Litowitz's admission pro hac vice until February 8, 2019, five court days before the scheduled hearing. He did not note the pro hac vice motion on the court's calendar. On February 11, before the Partnerships had filed a response, Admon and Litowitz also filed a motion to shorten the time in which the pro hac vice motion could be considered.

The Partnerships opposed both the pro hac vice motion and the motion to shorten time, citing Litowitz's conduct up to that point in the proceedings and his failure to show cause for shortening time.[2]

In support of his admission, Litowitz asserted that the misconduct alleged by the Partnerships "happens every day in every courthouse in America" and that the Partnerships only opposed his admission because he was "the strongest

---

[2] The Partnerships also filed a motion to disqualify Litowitz, which the court stated it would not entertain unless and until the pro hac vice motion was granted.

4

lawyer for the Chinese."[3]  At the hearing on his motion, Litowitz claimed that his

behavior was common to all attorneys "from Chicago."[4]  Ultimately, the trial court

denied the motion for his admission without stating its reasons for doing so.

The Dissenters, represented by Admon, proceeded without Litowitz in the

underlying litigation.  For his part, Litowitz sought discretionary review of the trial

court's decision on his pro hac vice motion, although his motion failed to analyze

the applicable Rule of Appellate Procedure.  Nevertheless, our commissioner

granted review, citing to APR 8(b)(ii)(1), which requires the trial court to "state its

reasons" for denying such a motion.[5]

II

Litowitz first claims that the trial judge erred by "fail[ing] to follow

Washington case law requiring him to hold a hearing before denying admission"

pro hac vice.  Br. of Appellants (sic) at 4.  Because our law does not, in fact,

require a full evidentiary hearing, and because Litowitz was actually allowed to

personally argue for his admission before the trial court, his claim of error is

groundless.

A

"The rule is that an attorney has no right under the United States

Constitution to appear pro hac vice."  Hallmann v. Sturm Ruger & Co., 31 Wn.

App. 50, 52, 639 P.2d 805 (1982).  Whether to grant an attorney's application to

practice law in Washington is a question left to the discretion of the trial court.

---

[3] Litowitz "represent[ed] 22 Asian clients."  Br. of Appellants (sic) at 1.

[4] Litowitz's offices are located in Deerfield, Illinois.

[5] As he is appearing pro se in this appeal, Litowitz represents only his own interest, not those of any party to the underlying litigation.

5

Hahn v. Boeing Co., 95 Wn.2d 28, 33, 621 P.2d 1263 (1980). Because a trial court "has a responsibility to administer justice and to insure that order is maintained in the litigation," the court must have "the measure of discretion to take steps to carry out [its] responsibility." Hallmann, 31 Wn. App. at 53.

Admission to Practice Rule (APR) 8(b) provides, in relevant part:

> **(b) Exception for Particular Action or Proceeding.** A lawyer member in good standing of, and permitted to practice law in, the bar of any other state or territory of the United States or of the District of Columbia . . . may appear as a lawyer in any action or proceeding only
>
> . . .
> (ii) in association with an active lawyer member of the Bar, who shall be the lawyer of record therein, responsible for the conduct thereof, and present at proceedings unless excused by the court or tribunal. . . .
>
> (1) An application to appear as such a lawyer shall be made by written motion to the court or tribunal before whom the action or proceeding is pending, in a form approved by the Bar, which shall include certification by the lawyer seeking permission under this rule and the associated Washington lawyer that the requirements of this rule have been complied with, and shall state the date on which the fee and any mandatory assessment required in part (2) were paid, or state that the fee and assessment were waived pursuant to part (2). The motion shall be heard by the court or tribunal after such notice to the Bar and payment of fees and assessments as required in part (2) below, unless waived pursuant to part (2), and to adverse parties as the court or tribunal shall direct. Payment of the required fee and assessment shall be necessary only upon a lawyer's first application to any court or tribunal in the same case. The court or tribunal shall enter an order granting or refusing the motion, and, if the motion is refused, the court or tribunal shall state its reasons.

The purpose of this rule is to provide reasonable assurance that the out-of-state attorney is competent, will conduct himself or herself in an ethical and

respectful manner in the trial of the case, and will comply with local rules of practice and procedure.  Hahn, 95 Wn.2d at 34.

B

In Hallmann, Division Two of this court reviewed a superior court order revoking an attorney's admission to practice pro hac vice.  Therein, the superior court had initially denied the defendant's motion to revoke opposing counsel's pro hac vice admission but, seven months later, revoked the admission sua sponte.  Hallmann, 31 Wn. App. at 51-52.  From this order, review was sought, contending that the lawyer had been "denied due process because permission was revoked without prior notice of the court's intended actions or the reasons therefor."  Hallmann, 31 Wn. App. at 52.

Division Two rejected the notion that an out-of-state attorney had a right, constitutional or statutory, to "notice and hearing" before revocation of pro hac vice status.  Hallmann, 31 Wn. App. at 52.  However, the court opined that "notice and hearing" are appropriate for "policy reasons."  Hallmann, 31 Wn. App. at 52.  Thus, before revoking an attorney's pro hac vice status, "notice and *an opportunity to respond* are necessary."  Hallmann, 31 Wn. App. at 54 (emphasis added).  "The attorney must be given a meaningful opportunity to respond although a full scale hearing is not required."  Hallmann, 31 Wn. App. at 55.

Contrary to Litowitz's assertion, there is nothing in our case law that requires that an attorney's "opportunity to respond" must take the form of a dedicated hearing.  Reply Br. of Appellants (sic) at 10.  So long as the notice and response requirements are met before the motion is granted or denied, it is within

7

the trial court's discretion to decide what form of procedure to employ. Litowitz's assertions to the contrary are meritless.

C

Litowitz's claim of error is meritless for yet another reason: he was, in fact, afforded a hearing before the trial court. Litowitz was given notice of the Partnerships' objection to his pro hac vice motion and of the specific allegations of misconduct that formed the bases for the objection. At the court hearing on the motion to dismiss, the trial court also gave Litowitz and local counsel additional time to respond to the opposition to his request for admission.

> And I have to say that, you know, I think you're all aware that this pro hac vice application—you're all aware that most—for the most part, these are almost—you know, noncontroversial. . . .
>
> . . . But it appears in this particular case that there is a lot more complicated allegations, which I suspect are disputed, but—I don't know that they're disputed, but there are some fairly, I guess I'll call them serious allegations, which I think call for some full airing.
>
> There's a motion to shorten time. And again, normally that's not a controversial matter at all. But in this particular case, the opposing party actually felt strongly enough to actually file a pretty substantial motion, response, even within the shortened time time frame to the underlying motion.
>
> So, you know, this—the Court will do it as follows. I'm going to deny the motion for pro hac vice application without prejudice at this time. What I'm going to do is—
>
> Counsel, because of the uncertainty on the motion to shorten time, I don't believe you ever filed a reply; is that correct?
>
> MR. ADMON: I believe that is correct, Your Honor.
> THE COURT: All right. So I'm going to give you an opportunity to file a reply, and then I'm going to decide the motion on pro hac, you know, on its merits.

8

However, when it became clear that Admon was unprepared to argue the motion to dismiss, the parties agreed to allow Litowitz to argue the motion without waiving the Partnerships' opposition to his admission. With the trial court's acquiescence, Litowitz orally addressed the opposition to his pro hac vice motion:

> What happened is very, very, very, very simple. Okay? I got into a little argument with them. They've blown it into World War III, and they've made this an ad hominem case. I, Litowitz, am not an important person. I'm not. This is about my clients from China, who I talk to every night on WeChat.
> . . . .
> So there was a fight between me and opposing counsel, there was. And I did use some—a curse word. I'm from Chicago. We use curse words. I've broken up fights in the Northern District Courthouse. You know, it's a little bit of a different culture, but— and it's a little more rough and tumble.
> . . . .
> This is about a ripoff. Don't let them distract you. They are magicians. They're trying to distract you over here, "Look over here, Judge. Look how bad a guy Doug is. Look at how bad he is." Over here, they just took a hundred million dollars from the Chinese.
>
> The Chinese are watching this case, hundreds of them, to see what will happen. If you're going to be distracted by this and you're going to say, "Well, we shouldn't let people into the great state of Washington to be a lawyer because of some accusation from somebody that he denied service," I mean, think about the ramifications of that.
>
> There's plenty of Washington lawyers pro hac'ing in Illinois. Do you want the Illinois Courts to start looking at every Washington lawyer that pro hacs into Illinois? From Walgreens and Boeing and, you know, all the major corporations in Illinois?

Thus, Litowitz received not only the opportunity to respond to which he was entitled, but he also received the in-person, in-court hearing that he claims to have been denied. His assertion of error is without merit.

III

We now reach the dispositive issue of whether the trial court complied with APR 8(b)(ii)(1)'s requirement that "[t]he court or tribunal shall enter an order granting or refusing the motion, and, if the motion is refused, the court or tribunal shall state its reasons."  Because the trial court did not state its reasons for denying the motion, compliance with the rule was not achieved.

The trial court's order denying the motion stated only that

> THIS MATTER having come before the Court upon Attorney Douglas Litowitz's Motion for Limited Admission Pursuant to APR 8(b) (the "<u>Motion</u>"), and the Court, having considered the following:
> - Motion for Limited Admission Pursuant to APR 8(b) (Sub #71);
> - Declaration of Douglas Litowitz in Support of Limited Admission on Motion (Sub #74);
> - Petitioners' Opposition to Motion for Limited Admission Pursuant to APR 8(b) (Sub #85);
> - Declaration of Robert S. Over in Support of Petitioners' Opposition to Motion for Limited Admission Pursuant to APR 8(b) (Sub #86);
> - Declaration of Matthew A. Carvalho in Support of Petitioners' Opposition to Motion for Limited Admission Pursuant to APR 8(b) (Sub #87);
> - Declaration of Douglas Litowitz in Support of in Support of [*sic*] Dissenters' Response to Petitioners' Opposition to Motion for Limited Admission of Douglas Litowitz Pursuant to APR 8(b) (Sub #94);
> - Declaration (Apology) of Douglas Litowitz (Sub #95); and
> - Declaration of Moshe Admon in Support of Dissenters' Response to Petitioners' Opposition to Motion for Limited Admission of Douglas Litowitz Pursuant to APR 8(b) (Sub #96),
>
> the Court finds that the Motion should be DENIED.

Plainly, this order does not state the trial court's reasoning.  As this was a superior court matter involving fact finding, findings of fact and conclusions of law should have been entered, setting forth the trial court's reasoning and the facts in

support of its decision. We cannot accept the Partnerships' contention that the trial court's simple listing of the filings pertaining to the motion is equivalent to stating its reasons for denying the motion. This is not a mere matter of rote compliance with the letter of APR 8(b). Without a statement of the trial court's reasoning and the factual bases therefor, we cannot suitably review whether the trial court properly exercised its discretion in denying the motion. Thus, the superior court's order must be reversed and the matter remanded for further proceedings.[6]

IV

We reverse the order denying the pro hac vice motion and remand the matter to the superior court for further action. To be clear, however, on remand the superior court has full authority to rule on the merits of the request after proceeding as it deems fit.

1. It may allow for oral argument on the motion or decline to do so.

2. It may rule based on the present evidentiary record and the legal memoranda presently on file.

3. It may conduct an evidentiary hearing or decline to do so.

4. It may call for further legal briefing or decline to do so.

---

[6] Litowitz has struggled to comply with our court rules. His motion for discretionary review failed to cite and analyze the pertinent rule or its requirements. His opening brief was rejected by our Court Clerk because of its pervasive noncompliance with our rules. His next attempt was accepted, but he continues to mislabel himself as an appellant, rather than as a petitioner. In addition, Litowitz wrongly briefs and argues issues that are outside of the grant of review. See City of Bothell v. Barnhart, 172 Wn.2d 223, 234, 257 P.3d 648 (2011). Our commissioner granted review only because the trial court appeared to have erred by ruling "without providing reasons."

While such a multitude of transgressions might earn a Washington lawyer an admonition or a sanction from us, we will simply state that we decline Litowitz's invitation to address issues that are beyond the scope of the review granted.

5. It may call for further written evidentiary submissions or decline to do so.

6. It may grant the motion or deny the motion. If the motion is denied, it must enter written findings of fact and conclusions of law that explain its reasons therefor.

Also, to be clear, we do not view the proceedings on remand to be equivalent to a reference hearing as allowed in Title 16 RAP. Our discretionary review of this matter is complete with the filing of this opinion. We are not—as the imprecise euphemism terms it—"retaining jurisdiction" of this case.

No right to direct appeal attaches to the order entered by the superior court on remand. Any aggrieved party may seek relief by means of discretionary review. RAP 2.3.

Reversed and remanded.

_____

WE CONCUR:

_____        _____