Pamela K. MARTENS, et al., Plaintiffs,

v.

SMITH BARNEY, INC., et al., Defendants.

No. 96 Civ. 3779(CBM).

United States District Court, S.D. New York.

May 16, 2000.

Michele Lang palter, Joseph D. Garrison, Gary Phelan, Garrison, Phelan, Levin-Epstein & Penzel, New Haven, CT, for Pamela K. Martens and Edna Broyles.

*MEMORANDUM OPINION*

MOTLEY, District Judge.

This memorandum opinion explains the court's rationale in vacating its previous order allowing Kent Spriggs and John C. Davis to appear as counsel in this matter, pro hac vice and in sanctioning attorneys Kent Spriggs and John C. Davis for violations of Fed.R.Civ.P. 11 ("Rule 11").

BACKGROUND

This 1996 class action involves charges of workplace gender discrimination against Smith Barney, Inc. and several of its officers. This court certified a settlement class and, in July 1998, approved a settlement agreement between plaintiffs and the Smith Barney defendants ("Smith Barney"). The court approved settlement provided for an independent dispute resolution process ("DRP") at Duke University as a means to adjudicate 22,000 potential individual claims by members of the plaintiff class. The court appointed the firm Stowell & Friedman of Chicago, Illinois as class counsel. The settlement also required Smith Barney to implement certain diversity programs and initiatives to benefit all employees and potential employees. The settlement also provided named plaintiffs and other class members with the option to employ their own counsel to represent them during the DRP. The settlement further provided for the creation of a panel of lawyers experienced in the trial of Title VII cases, thereby increasing the number of competent lawyers available to plaintiffs and class members in the DRP. By all credible reports, the DRP is running smoothly and serving class members well.

In November of 1999 the law firm of Spriggs & Davis of Tallahassee, Florida filed a motion to enforce the settlement stipulation purportedly on behalf of three plaintiffs. Mr. Spriggs signed and filed this motion without having been admitted to practice before this court. This motion sought broad relief, including unseating class counsel and drastically setting back the settlement process. On January 28, 2000 this court issued a memorandum opinion and order which denied Spriggs & Davis' motion for its "gross failure to comply with the page limits of this court's Individual Calendar Rules". The court's order specifically noted that the motion included serious allegations which were unsupported by affidavits. The court's order also granted Spriggs & Davis the opportunity to refile the motion in compliance with the local rules. The court's January 28 order specifically instructed "that any factual allegations regarding improprieties by class counsel or Smith Barney or both in connec-tion with the DRP be properly supported by affidavits, signed by individuals with personal knowledge of the alleged improprieties ... (and directed counsel's) attention to Rule 11 of the Federal Rules of Civil Procedure."

Upon showing of good standing as members of the Florida bar, this court granted Mr. Spriggs' and Mr. Davis' motions to appear before this court pro hac vice. In March of 2000 Spriggs & Davis filed a new motion to enforce the settlement stipulation on behalf of two named plaintiffs, Cara Beth Walker and Teresa Tedesco. This motion was signed by Mr. Spriggs. Class counsel filed a memorandum in opposition to this motion on April 17, 2000. Although class counsel did not file a motion for Rule 11 sanctions, their opposition brief argued that such sanctions would be appropriate in this case. Class counsel's memorandum in opposition to the motion to enforce the settlement stipulation informed this court of Mr. Spriggs' history of reprimands by the Florida bar and other courts. Spriggs & Davis elected not to file a reply memorandum on this motion. After the deadline for a reply had passed, this court ordered Mr. Spriggs to file a reply memorandum prior to the scheduled hearing. Spriggs & Davis filed a reply which did not contest the allegations of Mr. Spriggs' prior misconduct.

Both Mr. Spriggs and Mr. Davis appeared at the hearing on May 15, 2000. At the outset of the hearing this court afforded Mr. Spriggs yet another opportunity to disprove or explain his history of misconduct. Mr. Spriggs offered no exculpatory information, claiming such information was unrelated to the merits of his motion on behalf of two class members to enforce the settlement. The court reminded Mr. Spriggs that his personal misconduct, of course, had no bearing on the merits of the motion but obviously related to this court's grant of his motion to appear pro hac vice.

This court therefore rescinded Mr. Spriggs' admission to practice before this court pro hac vice, in light of his uncontested history of misconduct as clearly set forth in class counsel's answering papers of April 17, 2000. This opposition memorandum outlined Mr. Spriggs' "unusual and extensive record

of criticisms or reprimands by the Florida bar, various courts and his colleagues". Class Counsel's Mem. at 4. The memorandum proceeds to outline Mr. Spriggs' misconduct in the following four cases:

1. *Stinson v. Feminist Women's Health Center, Inc.*, 416 So.2d 1183 (Fla. DCA 1st Dist.1982). In that case the appeals court affirmed a punitive damages award against Mr. Spriggs, finding that he deceived clients in an attempt to take all of the settlement money for himself. This conduct earned Mr. Spriggs a public reprimand from the Florida Supreme Court.

2. *Worlds v. Department of Health*, 116 F.3d 491 (11th Cir.1997). In that case Mr. Spriggs served as counsel for the plaintiff class and the district court repeatedly expressed concerns as to the adequacy of plaintiffs' representation and asserted that plaintiffs' counsel repeatedly attempted to evade the court's ruling on an admissibility issue.

3. *Newton v. Sherwin–Williams Company*, 83–0825–L(A) (W.D.Ky.1994). In that case the court reduced the hourly rate negotiated for Mr. Spriggs' services after determining that Mr. Spriggs' representations as to the fees he earned in a previous case were false.

4. *Middleton v. Publix Supermkts.*, (M.D. Fla. June 15, 1998). In that case a magistrate judge wrote that counsel's conduct in the case revealed the unseemly side of plaintiff's attorney practice.

As no allegations had been raised against Mr. Davis, his admission to appear pro hac vice remained in place. Mr. Davis informed the court that he had worked with Mr. Spriggs on preparing the motion to enforce the settlement stipulation, had served as Mr. Spriggs' partner in other work seeking to represent class members and was prepared to advocate both the merits of the motion to enforce the settlement and reasons why neither he nor his law partner, Mr. Spriggs, should be sanctioned for bringing the motion to enforce the settlement.

Thus, it became clear to this court that, although the motion to enforce the settlement was signed only by Mr. Spriggs, both Mr. Spriggs and Mr. Davis are individually accountable for the filings by the firm Spriggs & Davis. Mr. Davis then proceeded with the presentation of his clients' evidence. He argued that a main factor in his firm's decision to file a motion to enforce the settlement was that many class members lacked legal representation in the initial mediation phase of the DRP causing them to accept inequitable settlement offers. Upon repeated questioning from the court, as the record reflects, Mr. Davis was unable to name a single plaintiff who was so unrepresented, yet repeatedly proffered this unsubstantiated assertion. He also claimed that class counsel had failed to provide individual class members with critical data collected and analyzed by class counsel for use in mediation, the first phase in the DRP. Class counsel responded by claiming data assembled in the initial mediation process of this entire litigation was available and later supplemented. Mr. Davis did not contradict this assertion.

At this hearing Mr. Davis similarly claimed misconduct by the attorneys in this case who represent the defendant, Smith Barney, as had been previously alleged in the motion signed by Mr. Spriggs. The allegation was that Smith Barney had improperly sent a notice to all its employees, immediately after the settlement agreement in this case had been signed, advising them, in essence, that before they could file any employment related claim they must first consult in-house counsel. Both class counsel and Smith Barney in their answering papers pointed out that, at the suggestion of class counsel, that notice, which could have been read by employees to block access to the DRP's mediation, had been withdrawn and a new notice sent to employees correcting the impression that it applied to the DRP in this case. Notwithstanding this response by Smith Barney's attorneys, Paul Weiss and class counsel, Mr. Davis repeated his original claims as made in the motion to enforce the settlement agreement.

## RULE 11 SANCTIONS

In relevant part Rule 11(b) provides as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other

paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.....3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Mr. Spriggs' and Mr. Davis' pursuit of their motion to enforce the settlement agreement strikes this court as precisely the type of conduct that the above quoted provisions of Rule 11 seek to prevent. Mr. Spriggs and Mr. Davis have persisted in making unsubstantiated allegations despite this court's warnings, beginning January 28, 2000, that such behavior cannot be tolerated from attorneys appearing before this court. Mr. Spriggs and Mr. Davis have advocated a clearly frivolous motion which has squandered the time of this court and the time and money of numerous attorneys legitimately involved in this protracted litigation. This litigation is now in its fourth year.

The motion to enforce the settlement lacks a legitimate purpose as granting such motion would not benefit class members but would only serve to further delay a final and equitable resolution of their claims. The only possible beneficiaries of the motion were Mr. Spriggs and Mr. Davis, themselves, who might earn fees should their unsubstantiated motion somehow prevail. Federal Rule of Civil Procedure 11(c)(1)(B) authorizes courts to impose sanctions for violations of Rule 11 sua sponte as the court has deemed appropriate in this instance. The magnitude of such sanctions is governed by Rule 11(c)(2) as limited to the amount sufficient to deter repetition of the offensive conduct or comparable conduct by others. In this instance the court deems a sanction in the amount of $5,000, each, to be paid by Mr. Spriggs and Mr. Davis, individually, as necessary to dissuade them from similar violations of Rule 11 in the future. Despite an explicit warning from the court on January 28, 2000 Spriggs & Davis

submitted a motion seriously lacking in proper factual substantiation. At oral argument on May 15, 2000 Mr. Davis persisted in making dramatic assertions despite the court's repeated admonitions of the need for proper factual substantiation. Mr. Spriggs and Mr. Davis were afforded, as the record reflects, ample opportunity to dispute the overwhelming evidence that they violated Rule 11 at the May 15 hearing. Mr. Spriggs and Mr. Davis failed to offer any mitigating factors which might either excuse their conduct or persuade the court that monetary sanctions were unnecessary to prevent either Mr. Spriggs or Mr. Davis from engaging in such conduct in the future. In light of the court's warnings to Mr. Spriggs and Mr. Davis and their persistent failure to heed such warnings, the court deems monetary sanctions of $5,000 each necessary and appropriate.

CONCLUSION

The court revokes its previous order granting Kent Spriggs and John C. Davis permission to appear in this action pro hac vice. Pursuant to the court's authority under Fed.R.Civ.P. 11(c)(1)(B) the court imposes sanctions of $5,000 each against Kent Spriggs and John C. Davis for violations of Rule 11.