Pamela K. MARTENS, Judith P. Mione, Cara Beth Walker and Teresa Tedesco, Plaintiffs–Appellants,

Kent Spriggs and John Davis, Appellants,

v.

Roberta O'Brien THOMANN, Robin Tompkins, Patricia Hanlon, Lorraine Parker, Bette Laswell, Jennifer Alvarez, Marianne Dalton, Patricia Clemente, Simone Schwendener, Edna Broyles, Stephanie Rodruck, Danielle Saccone, Beverly Trice, Lori Hurwitz, Lydia Klein, Eileen Valentino, Mary Ann Cabell, Ardis Vinnecour, and Tracy Gibbs, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

Smith Barney Inc., a/k/a Shearson/American Express, Shearson Lehman Hutton, a/k/a Shearson Lehman Brothers Holdings, Inc., a/k/a Shearson Lehman Brothers, Smith Barney/Shearson, Inc., James Dimon, Nicholas Cuneo, The New York Stock Exchange and The National Association of Securities Dealers, Defendants–Appellees.

Docket Nos. 00–7688(L), 00–7768 and 00–7772(CON).

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 2001.

Decided Nov. 20, 2001.

Gary Phelan and Joseph D. Garrison, Garrison, Phelan, Levin–Epstein, Chimes & Richardson, New Haven, CT, for plaintiffs-appellants Pamela K. Martens, Judith P. Mione, Cara Beth Walker, and Teresa Tedesco; and appellants Kent Spriggs and John Davis.

Kent Spriggs, Spriggs & Davis, P.A., Tallahassee, FL, for plaintiffs-appellants Cara Beth Walker and Teresa Tedesco.

Linda Friedman, Stowell & Friedman, Ltd., Chicago, IL (Max Fischer, on the brief), for plaintiffs-appellees.

Brad S. Karp, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY (Joyce S. Huang, Daniel J. Toal, on the brief), for defendant-appellee Smith Barney Inc.

Jerry G. Traynham, Patterson & Traynham, Tallahassee, FL, (submitted brief) for amici curiae Lisa Mays, Marianne Dalton, Edna Broyles, Danielle Saccone, and Cindy Van Lammeren.

Sally P. Dunaway, Thomas W. Osborne, Laurie A. McCann, AARP Foundation Litigation, Melvin Radowitz, AARP, Washington, DC, (submitted brief) for amicus curiae AARP.

Paula Brantner, National Employment Lawyers Association, San Francisco, CA, Margaret A. Harris, Butler & Harris, Houston, TX, (submitted briefs) for amicus curiae NELA.

Before: CALABRESI and SOTOMAYOR, Circuit Judges.*

SOTOMAYOR, Circuit Judge.

This opinion addresses three separate appeals arising out of a Title VII class action: (1) two class representatives, plaintiffs-appellants Cara Beth Walker and Teresa Tedesco, appeal from a judgment of the United States District Court for the Southern District of New York (Constance Baker Motley, *Judge*) denying their motion to enforce a class action settlement agreement, and seek reassignment of the case to a different judge on remand; (2) appellants Kent Spriggs and John Davis appeal from an order revoking their *pro hac vice* status and sanctioning them pursuant to Fed.R.Civ.P. 11, *see Martens v. Smith Barney, Inc.,* 194 F.R.D. 113 (S.D.N.Y.2000); and (3) two class representatives who opted out of the class, plaintiffs-appellants Pamela Martens and Judith Mione, appeal from the dismissal of their individual claims for failure to prosecute, pursuant to Fed.R.Civ.P. 41(b).

Because the district court denied the motion to enforce the settlement agreement without a hearing or an explanation, we vacate the dismissal and remand for clarification or further proceedings not inconsistent with this opinion. The motion to reassign is denied. Furthermore, because the district court afforded Spriggs and Davis neither sufficient notice nor op-portunity to be heard before issuing its order revoking their *pro hac vice* status and imposing Rule 11 sanctions, that order is vacated. Finally, finding that the district court abused its discretion in dismissing Martens's and Mione's individual claims for failure to prosecute, we vacate the judgment of the district court dismissing those claims.

## BACKGROUND

On May 20, 1996, one current and two former female employees of defendant-appellee Smith Barney/Shearson, Inc. ("Smith Barney"), plaintiffs-appellants Pamela Martens and Judith Mione (the "individual plaintiffs") and plaintiff Roberta O'Brien,[1] initiated this Title VII nationwide class action suit against Smith Barney and two Smith Barney officers, defendants-appellees Nicholas Cuneo and James Dimon, alleging sexual discrimination, harassment, and retaliation against them and others similarly situated.[2] The complaint also sought a declaratory judgment holding that the compulsory arbitration policies of Smith Barney and of defendants-appellees The New York Stock Exchange ("NYSE") and The National Association of Securities Dealers ("NASD")—pursuant to which all employment-related claims, including discrimination claims, are subject to binding arbitration—violated the Due Process Clause

---

* The Honorable Ellsworth A. Van Graafeiland, originally a member of the panel sitting on February 9, 2001, recused himself from consideration of the case after oral argument. The remaining members of the panel, who are in agreement, have decided the case pursuant to 2d Cir. R. § 0.14(b).

1. Twenty additional named plaintiffs, including plaintiffs-appellants Cara Beth Walker and Teresa Tedesco, were subsequently added to the plaintiff's class through amended complaints filed on July 2, 1996 and October 17, 1996.

2. The complaint alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1994); the Equal Pay Act of 1963 and the Fair Labor Standards Act, 29 U.S.C. §§ 206–207, 215 (1994); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (1994); the New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.* (McKinney 1993); N.Y.C. Admin. Code § 8–107 *et seq.* (1996); and New York common law.

of the Fifth Amendment.[3] The district court appointed Stowell & Friedman, Ltd. as counsel for the class.

By October 1996, all defendants had moved to dismiss the declaratory judgment count of the complaint. On November 21, 1997, the district court issued an order preliminarily approving a settlement agreement (the "Settlement Agreement"), conditionally certifying a settlement class, providing for notice, and scheduling a fairness hearing.

On April 9, 1998, the court conducted the scheduled fairness hearing and, on June 23, 1998, issued an opinion rejecting the Settlement Agreement as unfair. *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 268 (S.D.N.Y.1998). On July 23, 1998, the court conducted a second fairness hearing, and, on July 28, 1998, the court issued a final order and judgment approving an amended version of the Settlement Agreement. *Martens v. Smith Barney, Inc.*, No. 96 CIV 3779, 1998 WL 1661385 (S.D.N.Y. July 28, 1998). In its order, the district court purported to retain "exclusive jurisdiction" over all disputes arising from the settlement or its order:

> Without affecting the finality of this Final Order and Judgment, this Court retains exclusive jurisdiction over the implementation and enforcement of this Final Order and Judgment. Smith Barney, the Named Plaintiffs and Class Representatives, and each member of the Class are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for any suit,

action, proceeding or dispute relating to this Final Order and Judgment or the Settlement Stipulation, except to the extent remitted by the Settlement Stipulation for resolution in a different forum. *Id.* at *5.

Among other things, the Settlement Agreement provided for a Dispute Resolution Process ("DRP") for the handling of individual claims. The Settlement Agreement also provided that "[i]f this Settlement Agreement does not become effective for any reason or is terminated pursuant to Section Fifteen of this Settlement Stipulation, this Settlement Stipulation shall be deemed null and void and of no force or effect, and the Parties shall be restored to their respective positions existing prior to the date of this Settlement Stipulation." The court's order approving the settlement contained a provision to much the same effect. *Id.*

The Settlement Agreement became effective on February 1, 1999. On June 24, 1999, Stowell & Friedman, as class counsel, filed a report on the implementation of the Settlement Agreement in which it reported that Smith Barney had made significant progress in implementing the agreement.

**Denial of the Motion to Enforce the Settlement Agreement, Revocation of *Pro hac vice* Status, and Imposition of Rule 11 Sanctions**

On November 19, 1999, class representatives Cara Beth Walker and Teresa Tedesco (the "moving plaintiffs")[4] filed a so-called "motion to enforce" the Settlement

---

**3.** The district court subsequently dismissed plaintiffs' due process claim as against NYSE and NASD. *Martens v. Smith Barney, Inc.*, 190 F.R.D. 134, 137–38 (S.D.N.Y.1999).

**4.** The motion also purported to be filed on behalf of Lisa Mays, who is claimed in the motion to be one of the "Representative Plaintiffs." However, we note that there does

not appear to have ever been an amendment of the complaint to add Mays as a named plaintiff, her name has never appeared in the case captions either below or in this court, and she has filed a brief *amicus curiae* in this appeal. Mays's status does not, however, affect the outcome of this appeal.

Agreement, and a motion to substitute the law firm of Spriggs & Davis for Stowell & Friedman as their counsel "in their roles as Representative Plaintiffs." Among other things, the motion accused class counsel and Smith Barney of breaching the Settlement Agreement in numerous respects and requested that the district court invalidate the DRP. That same day, these class representatives filed a so-called "emergency motion" for relief from Judge Motley's rules limiting memoranda of law to twenty-five pages in connection with their motion to enforce. Kent Spriggs, of Spriggs & Davis, had filed a motion to appear *pro hac vice* on November 4, 1999, and had signed the various motion papers submitted by the class-representative plaintiffs requesting substitution of counsel. The district court had not ruled on Spriggs's *pro hac vice* motion when Spriggs signed the motion papers.

In its opposition to the moving plaintiffs' motion to substitute Spriggs & Davis, Stowell & Friedman contended, *inter alia,* that Spriggs had been cited for professional misconduct by other courts and was therefore unqualified to take over as class counsel. In his reply papers, Spriggs specifically disclaimed any desire to be appointed class counsel and stated that "[i]t would seem that the only relevance of the many pages of personal attack on the undersigned and his firm is whether he is 'adequate' under Rule 23(a)(4). Since that is not an issue before the Court, movants respond only cursorily to the allegations." After noting that Spriggs's firm had been placed on the initial attorney panel and that class counsel had praised Spriggs's abilities earlier, Spriggs stated that "Class Counsel's personal attacks are clearly a decoy. To the extent they merit any response, with regard to the opinions of other courts, those speak for themselves, and, when fairly read, do not support Class Counsel's spin."

In their papers opposing the "motion to enforce," Stowell & Friedman and Smith Barney argued that the motion for substitution of counsel was replete with sweeping allegations against them that were utterly lacking in evidentiary support. By letter dated January 3, 2000, the moving plaintiffs requested that the district court ask class counsel and Smith Barney for a status report on the implementation of the Settlement Agreement. This letter contained a list of proposed questions that the moving plaintiffs suggested the court ask Stowell & Friedman and Smith Barney. The court never acted on this request.

In an opinion and order dated January 31, 2000, the district court—which had not granted moving plaintiffs prior permission to exceed the twenty-five-page limit—denied plaintiffs' "motion to enforce" for, among other reasons, failure to comply with its individual rules. *Martens v. Smith Barney, Inc.,* No. 96 CIV. 3779, 2000 WL 108831 (S.D.N.Y. Jan. 31, 2000). The district court noted that the allegations made in the motion were "unsupported by affidavits from individuals with personal knowledge," and that if the moving plaintiffs wished to refile their motion in accordance with the court's Individual Rules, Spriggs was instructed that "any factual allegations regarding improprieties by class counsel or Smith Barney or both in connection with the DRP be properly supported by affidavits signed by individuals with personal knowledge of the alleged improprieties." *Id.* at *1.

Although the opinion did not specifically rule on the motion to substitute, the opinion also discussed Spriggs's *pro hac vice* status:

> The court has found no record from which it can conclude that Mr. Spriggs is currently admitted to practice in the Southern District of New York. Mr.

Spriggs has signed each motion paper. The name of a local law firm also appears on the papers. Rule 1.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York outlines the various routes by which non-admitted attorneys may gain the right to practice in courts within the Southern District. The court also calls Mr. Spriggs'[s] attention to Rule 11 of the Federal Rules of Civil Procedure. Mr. Spriggs must demonstrate compliance with Rule 1.3 prior to entering an appearance before this court. Mr. Spriggs is instructed to submit either proof of admission to practice in the Southern District of New York and current good standing therein or a motion to appear *pro hac vice* supported by proof of admission to practice and current good standing in another jurisdiction.

*Id.* at *2. The court did not refer, however, to Spriggs's motion to appear *pro hac vice* that had been pending for three months.

Finally, the court gave moving plaintiffs twenty-one days to refile their "motion to enforce" the Settlement Agreement in compliance with the court's page limit requirement. The court also stated that, in the event that the motion were refiled, the court would conduct an evidentiary hearing on that motion in order to "hear testimony of various witnesses and receive exhibits." *Id.*

On February 2, 2000, local admitted counsel filed, on Spriggs's behalf, a second motion for Spriggs to appear *pro hac vice*.[5] The second motion referenced Spriggs's first motion to appear *pro hac vice*, and,

like the first motion, was not opposed. On February 14, 2000, the district court granted *pro hac vice* status to both Spriggs and Davis "for the purposes of representing Cara Beth Walker, Lisa Mays, and Teresa Tedesco as regards their motion to enforce the settlement stipulation."

On March 28, 2000, the moving plaintiffs filed a second "motion to enforce" the Settlement Agreement. The second motion largely reiterated the allegations made in the original motion to enforce. In their opposition papers, class counsel and Smith Barney again disputed each of the allegations raised by the moving plaintiffs and again argued that the moving plaintiffs' motion was frivolous and not supported by evidence. Furthermore, class counsel argued that Rule 11 sanctions should be imposed against Spriggs and Davis for filing a baseless motion without evidentiary support. Class counsel did not file a separate Rule 11 motion, however, or follow the procedures specified in Rule 11. Smith Barney merely noted that asserting frivolous allegations is sanctionable under 28 U.S.C. § 1927.[6] After being personally instructed to do so by the court, Spriggs filed a reply.

The district court scheduled a hearing on the filed "motion to enforce" for May 15, 2000, and denied class counsel's request to have the district court decide the motion on the papers. The court also issued an order stating that the hearing would concern "the motion to enforce the settlement agreement" and made no reference to revocation of *pro hac vice* status or the imposition of sanctions under Rule 11.

---

5. Similarly, on January 31, 2000, local admitted counsel filed a motion for Davis to appear *pro hac vice*.

6. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territo-

ry thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1994).

The court's order directing Spriggs to file a reply brief likewise made no reference to the request to revoke *pro hac vice* status or to impose sanctions.

The moving plaintiffs' reply brief responded to the substantive arguments made by class counsel and Smith Barney, but did not address the allegations of Spriggs's misconduct in other cases, except to suggest that Rule 11 issues were not properly before the court and to offer "to respond to any inquiry from the Court concerning any of the events described in Class Counsel's Memorandum."

On May 15, 2000, the district court held the scheduled hearing. Instead of hearing evidence and testimony on the "motion to enforce," however, the district court asked Spriggs about class counsel's allegations of prior professional misconduct. Spriggs stated that he had not responded to these allegations in his reply brief because class counsel had not filed a formal Rule 11 motion and because the court had not followed the required method for initiating Rule 11 proceedings *sua sponte*. Spriggs added that he would be happy to answer any questions from the court or to file a supplemental brief on these issues if the court wished. In response, the district court withdrew its order permitting Spriggs to appear *pro hac vice*, stating:

> [The court's] approval [of Spriggs'[s] motion to appear *pro hac vice* ] is withdrawn based on the contents of this response which I have noted and your failure to respond. So you are removed from the determination—or I revoke the determination, rather, I should say, which allows you to appear here. That background of yourself was never brought to my attention until now. We can't permit lawyers with histories like yours to appear in the Southern District. You may be allowed to appear some-

where else, but you're not allowed to appear here.

The court next stated that it would allow class counsel to speak on "the Rule 11 matter." Class counsel argued that Rule 11 sanctions were appropriate because the "motion to enforce" contained allegations "that were not researched, not well-founded, [and] not made in good faith."

The district court then permitted Davis to respond to these contentions. Davis and the court entered into a fairly extensive colloquy in which he described the allegations in the "motion to enforce" and the evidence that supported each of the allegations. Davis further argued that defendants neither filed a Rule 11 motion nor followed the procedural requirements set out in Rule 11. Davis also argued that he and Spriggs had no prior notice of the possibility of the court imposing Rule 11 sanctions in this situation because the district court's order denying their first motion to enforce referred to Rule 11 in the context of ensuring that Spriggs was admitted *pro hac vice* before he signed the motion papers, not in the context of submitting a motion without sufficient evidentiary support.

Smith Barney's counsel then spoke regarding sanctions. Counsel cited the court's reference to Rule 11 in its earlier order, and class counsel's and Smith–Barney's references to Rule 11 in their opposition papers. Counsel further suggested that the court could impose sanctions under 28 U.S.C. § 1927 or pursuant to its equitable powers.

At the conclusion of the hearing on the sanctions motion, Davis requested permission to brief the issue. The court denied his request. The court then orally imposed sanctions on both Davis and Spriggs:

> [P]ursuant to Rule 11 and 28 U.S.C. Section 1927, sanctions are imposed on

Kenneth Spriggs and John Davis in the amount of $5,000 each. As has been indicated, this court warned both of these lawyers when they first filed something in this court back in January of this year of the provisions of Rule 11, and so the issue of whether they have had sufficient notice that they would be sanctioned by the court for failure to produce evidence in support of their allegations has been clearly met.

Davis requested that the court hear argument on the "motion to enforce." The court responded that the motion was "denied on the merits." The court did not, however, expound further on its reasons for denying the motion.

The following day, May 16, 2000, the district court issued a written memorandum opinion revoking Spriggs and Davis's *pro hac vice* status and sanctioning the attorneys pursuant to Rule 11.[7] *Martens,* 194 F.R.D. 113. The court stated that its January 28, 2000 order had specifically given Spriggs and Davis notice that the court would consider Rule 11 sanctions if they submitted a motion making allegations without adequate support. The court also noted that class counsel and Smith Barney had argued in their opposition papers that sanctions would be appropriate. The court stated that it had provided Spriggs and Davis an opportunity to submit a reply to those papers and to be heard in court on the matter. The court explained that it revoked Spriggs's *pro hac vice* status because of his history of misconduct before other courts and Spriggs's failure to "disprove or explain" this history. *Id.* at 113–15. The court did not explain, however, why it was revoking Davis's *pro hac vice* status (which it had

not seemingly revoked in the prior day's hearing). Nor did it elaborate on the basis for its denial of the refiled "motion to enforce."

The moving plaintiffs appeal the district court's denial of their second motion to enforce. Spriggs and Davis appeal the order revoking their *pro hac vice* status and imposing Rule 11 sanctions on them.

### Dismissal of the Individual Plaintiffs' Claims for Failure to Prosecute

On April 6, 1998, the individual plaintiffs opted out of the class. Immediately thereafter, the individual plaintiffs sought permission of the court to be heard on the fairness of the settlement at the court's scheduled fairness hearing. The district court denied the request, ordering that "no individual who has excluded herself from the class ... may participate at the hearing." On August 13, 1998, the individual plaintiffs (and another plaintiff, Edna Broyles, who had not opted out of the class) filed a *pro se* motion for "reconsideration" of the order approving the Settlement Agreement. On November 10, 1998, the district court denied the motion for reconsideration because, *inter alia,* "Martens and Mione previously withdrew from this class action."[8]

On February 1, 1999, the Settlement Agreement became effective. Believing that the Settlement Agreement did not resolve all of the claims alleged in the complaint, the individual plaintiffs inferred that the remaining claims became their individual claims. Chief among these was the claim seeking a declaration that defendants' compulsory arbitration policies violated federal law. By October 1998, all defendants had moved to dismiss this

---

7. Unlike the district court's oral imposition of sanctions, its written order did not mention 28 U.S.C. § 1927.

8. The court also denied the motion both as untimely (i.e., it had not been filed within ten days of entry of the judgment approving the settlement) and unmeritorious.

claim. On February 4, 1999 (three days after the Settlement Agreement became effective), the individual plaintiffs' counsel sent a letter to the court responding to defendants' pending motion to dismiss the declaratory judgment claim. NASD's counsel responded on February 10, 1999, informing the court that she had recently argued the same issue (i.e., the enforceability of such compulsory arbitration policies under federal law) in *Desiderio v. National Association of Securities Dealers*, 191 F.3d 198 (2d Cir.1999), then still pending before the Second Circuit and that "the parties need not speculate as to how the Second Circuit would rule." The individual plaintiffs claim that, in light of NASD's letter, they decided to delay their attempt to proceed with depositions and discovery with respect to their individual claims until either the Second Circuit ruled in *Desiderio* or the district court ruled on the pending motion to dismiss.

On April 5, 1999, the district court issued an order scheduling a pre-trial conference to address all pending motions. Prior to the conference, on June 11, 1999, the individual plaintiffs submitted a letter to the court stating that (1) the only motion pending before the court was defendants' motion to dismiss the declaratory judgment count, and (2) Smith Barney had not sought to compel arbitration of the individual plaintiffs' claims. The individual plaintiffs also noted that, because there was no pending motion to compel arbitration, they were contemplating initiating discovery with respect to their claims. In a letter to the Court dated June 17, 1999, Smith Barney responded that, if the individual plaintiffs commenced discovery in connection with their claims, Smith Barney would move to compel arbitration of those claims:

> We recognize that this Court's ruling on defendants' pending motions to dismiss concerning the issue of Form U–4 arbi-

tration likely will clarify the issues on any motion to compel. Smith Barney has no desire to engage in potentially duplicative or needless motion practice, particularly where a brief deferral until such time as this Court resolves defendants' motion to dismiss will simplify and clarify the issues before this Court. But, absent direction from this Court, [the individual plaintiffs' counsel's] suggestion that he may "proceed with discovery against Smith Barney" leaves us no choice but to move to compel arbitration, and to take such other action as may be appropriate.

On June 28, 1999, individual plaintiffs noticed depositions for August 5 and 6, 1999. On August 2, 1999, Smith Barney filed a motion to compel arbitration of the individual plaintiffs' claims.

On December 2, 1999, the court issued an order granting defendants NYSE's and NASD's motions to dismiss the declaratory judgment claim, relying primarily on this Court's intervening decision in *Desiderio*. *Martens v. Smith Barney Inc.*, 190 F.R.D. 134, 137–38 (S.D.N.Y.1999). As to Smith Barney, the court noted that Smith Barney had a pending motion to compel arbitration of the individual plaintiffs' claims or, in the alternative, to dismiss or to stay the action as to these claims, and that the court had "not yet addressed the lawfulness of the specific arbitration procedures proposed by Smith Barney." *Id.* at 138. The district court held, however, that "[p]rior to ruling on Smith Barney's motions, this court must first determine whether Martens and Mione, as opt out plaintiffs, properly have any individual claims remaining before this court." *Id.* The district court concluded that "named plaintiffs, like non-named plaintiffs, who opt out of a settlement no longer remain in the class in any capacity and if they wish to pursue their unique cases they must

actively do so separate from the class." *Id.* at 139–40. However, because the court was concerned that plaintiffs may not have understood the effect of opting out when they made the decision to do so, the court afforded the individual plaintiffs thirty days to rejoin the plaintiff class. The court reserved judgment on Smith Barney's motions until after the thirty-day period had expired.

The individual plaintiffs decided not to rejoin the class and filed a motion for reconsideration arguing that their individual claims still remained pending before the court even though they had opted out. In response, on January 24, 2000, the district court issued an opinion giving the individual plaintiffs ten days to rejoin the class. *Martens v. Smith Barney Inc.,* 191 F.R.D. 54, 56 (S.D.N.Y.2000). The court stated that, in the event the individual plaintiffs decided not to rejoin the class, their "individual claims remained pending as such but may now have been barred by laches or the statute of limitations." *Id.* The district court set a schedule for the parties "to brief both the laches and the statute of limitations questions if plaintiffs again reject the option to opt back in to the class and settlement within the next ten days." *Id.* The court noted that it would hear oral arguments "on these questions only." *Id.* Similarly, in its scheduling order of the same date, the court stated: "The court will hear arguments only on the issues of laches and statute of limitations."

The individual plaintiffs chose not to rejoin the class. In response, Smith Barney contended that the individual plaintiffs' failure to prosecute their claims diligently amounted to laches. In their opposition brief, the individual plaintiffs responded as follows:

> Apparently realizing that they cannot show substantial prejudice as required by the laches defense, the defendants instead argue that the less stringent standards applied in failure to prosecute cases should be followed. However, this court ordered the parties to address only the issue of whether laches or the statute of limitations now barred the plaintiffs from pursuing their individual claims. The one case which the defendants rely upon to establish a connection between the failure to prosecute defense and the laches defense dealt only with equitable claims which did not have a statute of limitations. *See Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g Co.,* 255 F.2d 518, 522 (2d Cir.1958). Moreover, the court did not rule that the plaintiff's claims were barred due to an eleven-year delay and even rejected arguments that the plaintiff's damages should be reduced as a result of that delay.

On April 27, 2000, the district court heard oral argument on the laches and statute of limitations issues. On May 15, 2000, the court issued a memorandum and order dismissing plaintiffs' individual claims for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). The district court acknowledged that it "ha[d] not ordered either party to brief the issue of failure to prosecute," but observed that "the parties' briefs on the issue of whether Martens's and Mione's individual claims should be barred by laches sheds light on the relevant factors regarding failure to prosecute." The court rejected the individual plaintiffs' justifications for their delay and determined that, "[i]n light of Martens'[s] and Mione's history of behavior in this action, ... no lesser sanction than dismissal would be appropriate or effective."

On May 18, 2000, the individual plaintiffs filed a motion for reconsideration, arguing that the district court's decision to dismiss

the claims for failure to prosecute was premature because the court had not ruled on Smith Barney's motion to compel arbitration, and thus had failed to determine whether the court had subject matter jurisdiction over the individual claims. The district court denied the motion for reconsideration.

The individual plaintiffs appeal the district court's dismissal of their claim for failure to prosecute.

## DISCUSSION

### I. Appeal of the Moving Plaintiffs

#### A. Denial of the "Motion to Enforce"

We begin our discussion by noting that there is nothing in the Federal Rules of Civil Procedure styled a "motion to enforce." Nor is there approval for such a motion to be found in this Circuit's case law, except in situations inapposite to the case before us. Unfortunately, neither the parties nor the court below clarified precisely what relief was being requested and under what rule the motion was noticed.

■ We note this failure not merely to enforce procedural formality, but because typically we would be severely burdened in our review of the disposition of this "motion" on appeal. There are, for example, many ways in which the performance of a class action settlement might be called into question before the district court: in a contempt proceeding (if the claim is that the district court's orders are not being complied with); in a new action for breach of contract (if the claim is that one or more parties are not living up to their obli-

gations under the settlement stipulation); or in a motion for relief from judgment under Fed.R.Civ.P. 60(b) (if an amendment of the original judgment is being requested). (We are not suggesting which, if any, of these possibilities—or others—is the proper vehicle for the relief sought by the moving plaintiffs in this case.) Each one of these (or other) possibilities, however, carries its own procedures, its own standards for granting relief by the district court, and its own standards of review in this Court, thus making identification of the precise nature of the motion an essential for our review (and, we believe, for the district court's decision in the first instance).

■ However, we need not ourselves define the nature of this motion because the district court's failure to state its reasons for denying it is sufficient to warrant reversal. Were the allegations made in the "motion to enforce" wholly incapable of warranting relief under any standard, we might well affirm the district court's denial. However, some of the claims asserted in the motion raise serious questions about class counsel's performance under the Settlement Agreement. For example, the moving plaintiffs contend that, in violation of their obligations under the Settlement Agreement, class counsel failed to prepare sufficient statistical evidence to provide a factual basis for claimants to make informed choices regarding the value of their claims. Although it appears that class counsel performed statistical analysis on data from 1994 to 1995, there is no indication in the record that any statistical analysis was performed on subsequently collected data.[9]

9. A second example is the moving plaintiffs' argument that class counsel's retainer agreement is unfair. Specifically, the moving plaintiffs attack paragraph 10 of the retainer agreement, which provides that, if new coun-

sel retained for arbitration convinces Smith Barney to tender a better offer in the course of the litigation, the former client would still owe class counsel a 25% contingency fee. Thus, the moving plaintiffs argue, such a class

■ Given the district court's failure to explain its denial of the motion to enforce on its merits, we cannot determine why the district court denied the motion without engaging in inappropriate speculation. Under the circumstances, it is better to remand to seek clarification from the district court before venturing to say whether the court abused its discretion in denying the motion. *Cf. Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 521 (2d Cir.1993) (remanding for clarification of reasons for district court's award of attorneys' fees because "this Court will not speculate as to whether the award is appropriate under any other theory that has not been stated by the district court"); *Inverness Corp. v. Whitehall Labs.*, 819 F.2d 48, 51 (2d Cir.1987) (stating that where appellate court "cannot, without resorting to speculation, determine whether the district court considered [material] issues," "the only appropriate procedure is to remand the case to the district court for a[n] explanation of its decision"). Remand will of course also give both the parties and the district court the opportunity to clarify precisely what relief is sought and on what grounds (i.e., under what rule(s) the motion is brought). Finally, to the extent that the motion, once properly characterized, requires resolution of disputed factual issues, the district court will have the opportunity on remand to conduct an evidentiary hearing and to allow the parties discovery as appropriate.[10]

member would pay a double fee: a 25% contingency fee to class counsel in addition to any fee owed to new counsel. Under the retainer agreement, if new counsel litigates the arbitration to judgment, the class counsel is still entitled to a fee calculated at the firm's prevailing hourly rates, which the document does not disclose. Although class counsel responds that the agreement is fair because, if a claimant wins at arbitration with the assistance of other counsel, they are required only to pay class counsel at an hourly rate for work performed and not the contingency fee, this is clearly a dispute that the district court should explicitly address on remand.

Similarly, the moving plaintiffs contend that the cover letter appended to class counsel's fee agreement sent to class members was misleading because it repeatedly stated that the claimant was being invited to *"continue* to use the firm's services." The moving plaintiffs maintain that this was misleading because, up to that point in time, Smith Barney had been paying all fees and this was the first time that the individual claimant was being asked to pay fees. The moving plaintiffs also contend that the letter was misleading because it states that class counsel are charging less than their regular rate (25% versus the usual 33⅓%), but fails to disclose that they are receiving an additional 10% under the settlement agreement. *See Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1109 (3d Cir.1979) (instructing that courts should strictly scrutinize contingent fee contracts employed in class ac-

tions); *see also Alexander v. Chi. Park Dist.*, 927 F.2d 1014, 1024 (7th Cir.1991) (same); *Pete v. United Mine Workers of Am. Welfare & Ret. Fund of 1950*, 517 F.2d 1275, 1291 (D.C.Cir.1975) (same).

Finally, some of the claims raised in the motion may require further discovery. For example, the moving plaintiffs allege that class counsel breached their obligation under the Settlement Agreement to ensure that all class members received legal representation during the DPR because a large number of class members did not in fact receive legal representation during the DPR. Class counsel and Smith Barney make much of the fact that, when the district court questioned Davis about this allegation during the May 15, 2000 hearing, Davis was unable to identify a single class member who did not receive representation. Yet Davis's inability in this regard may be attributable to the apparent fact that the names of class members and the number of class members represented by counsel were all within the exclusive control of class counsel.

10. Although given our disposition we need not decide the issue, we note class counsel and Smith Barney's argument that the moving plaintiffs lack standing to bring their "motion to enforce" because they are unable to show that they personally suffered the injuries alleged in the motion rather than relying on injuries that have been suffered by other

## B. The Motion to Reassign

■ The moving plaintiffs also ask this Court to reassign this case to another District Judge on remand. Although as a general rule, "cases remanded to a District Court for further proceedings are sent back without any directions or suggestions as to the judge before whom they are to be conducted," in a few instances "there may be unusual circumstances where both for the judge's sake and the appearance of justice, an order of reassignment is appropriate." *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 146–47 (2d Cir.2000) (internal quotation marks omitted). In determining whether reassignment is appropriate, we consider the following factors:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 147.

Reassignment in this instance presents a close question given the grounds chosen by Judge Motley to disqualify Spriggs and

members of the plaintiff class. The moving plaintiffs respond that their standing arises from their status as certified class representatives, and that they have a fiduciary duty to protect the class regardless of their individual injury.

· Generally, the moving plaintiffs are correct in stating that special standing rules exist for class representatives. Although, upon certification of a class, the class representative must have individual standing, see 3 *Newberg on Class Actions* § 2.06 (1992), class representatives may continue to represent a class even if their individual claims become moot. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) ("[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied."); *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) ("The [live] controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot.").

Moreover, as class representatives, the moving plaintiffs have fiduciary duties towards the other members of the class. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 331, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (stating that class representatives have a responsibility "to represent the collective interest of the putative class" in addition to

their private interests); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077 (2d Cir.1995) ("Both class representatives and class counsel have responsibilities to absent members of the class."); *see also Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir.2000) (stating that "[a] representative plaintiff acts as fiduciary for the" other class members); *Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 938–39 (8th Cir.1995) (stating that "certified representatives and the class counsel assume[ ] certain fiduciary responsibilities to the Class," and as a result, "the certified representatives may not take any action which will prejudice the Class's interest, or further their personal interests at the expense of the Class").

The cases relied upon by class counsel to support their proposition that a party's standing must be based on its own injuries, rather than an assertion of the rights of others, are limited to the issue of an individual plaintiff's standing. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (affirming dismissal of putative class action because individual plaintiffs lacked standing and not reaching issue of class certification); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215–28, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (finding lack of citizen standing and taxpayer standing); *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1059–61 (2d Cir.1991) (finding that individual plaintiffs lacked standing). As this case concerns the standing of Rule 23 class representatives, this line of authority is inapposite.

Davis. *See infra* section II. Hence, the appearance of fairness might be promoted by reassignment. Nevertheless, this is a large, complex, and long-lived class action suit with which Judge Motley is intimately familiar. As such, reassignment would necessarily engender a good deal of waste and duplication. On balance, we believe that this squandering of judicial resources would be out of proportion to the modest gain in the appearance of fairness that reassignment might bring. The motion to reassign is therefore denied.

## II. Revocation of *Pro hac vice* Status and Imposition of Rule 11 Sanctions

### A. Revocation of *Pro hac vice* Status

■ This Court reviews a district court's imposition of sanctions for abuse of discretion. *United States v. Seltzer*, 227 F.3d 36, 39 (2d Cir.2000). Presuming that revocation of *pro hac vice* status is a species of sanction, we have held that a district court's revocation of *pro hac vice* status is subject to abuse of discretion review. *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 138 F.3d 33, 37 (2d Cir.1998).

We have held that "[d]ue process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir.1999). In *MacDraw*, this Court affirmed the district court's revocation of two attorneys' *pro hac vice* status where the district court held a hearing and issued an order to show cause specifically identifying the sanctionable conduct. *MacDraw*, 138 F.3d at 36–37. We did not, however, explicitly address the question of whether due process requires notice and an opportunity to be heard before revocation of *pro hac vice* status. An affirmative answer to this question is strongly implied,

however, by (1) our general holding, in *Nuwesra*, that sanctions may be imposed only after an attorney has been afforded notice and an opportunity to be heard, and (2) our presumption, in *MacDraw*, that revocation of *pro hac vice* status is a species of sanction.

We find further support for this conclusion in Local Civil Rule 1.5 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York ("Local Rules"), which governs attorney discipline. Rule 1.5 provides that discipline may be imposed only "after notice and an opportunity to respond." Local Civ. R. 1.5(b). There is no indication in Rule 1.5 that this requirement applies only to admitted counsel, as opposed to *pro hac vice* counsel.

■ Our decision in *In re Rappaport*, 558 F.2d 87 (2d Cir.1977) is not to the contrary. Class counsel contends that there we revoked an attorney's *pro hac vice* status without affording him notice and an opportunity to be heard because, among other things, he had been suspended from the practice of law in Florida for forty-five days. In fact, however, *Rappaport* concerned not a *revocation* of *pro hac vice* status, but rather an application for *pro hac vice admission*. *See id.* at 89–90. We upheld the district court's denial of the application for admission. We have never held that denial of an application to appear *pro hac vice* is a sanction, and nothing in *Rappaport* is inconsistent with our holding today that revocation of *pro hac vice* status is a form of sanction that cannot be imposed without notice and an opportunity to be heard. *See United States v. Collins*, 920 F.2d 619, 627 (10th Cir.1990) (holding that although attorney's past "behavior before other courts provided ample grounds to scrutinize his application for *pro hac vice* admission," "because the district court in exercise of its discretion admitted [the

attorney] *pro hac vice,* the court's subsequent revocation of such status must be evaluated as though it had disqualified a regular member of [that district court's] bar"); *Kirkland v. Nat'l Mortgage Network, Inc.,* 884 F.2d 1367, 1372 (11th Cir. 1989) (same).

■■ The notice and opportunity to respond provided to Spriggs before revoking his *pro hac vice* status were so flawed as to constitute an abuse of discretion. It is undisputed that Spriggs was not given notice by the court that it could revoke his *pro hac vice* status on the basis of his past conduct until the hearing during which the court did so. In class counsel's December 10, 1999 memorandum in opposition to the motion to substitute Spriggs & Davis for class counsel, class counsel had provided the district court with information regarding Spriggs's past misconduct five months prior to the district court's May 16, 2000 revocation of Spriggs's *pro hac vice* status. Then, on December 16, 1999, Spriggs had responded to the allegations of his past misconduct in reply to that opposition memorandum and, on February 14, 2000, the district court had granted his second motion to appeaɾ *pro hac vice.*

Nor did the district court afford Spriggs a realistic opportunity to respond to the charges of past misconduct. In its May 16, 2000 opinion, the district court asserted that Spriggs had been afforded two opportunities to respond to these charges. After noting that class counsel had included the charges in their April 17, 2000 opposition to the *second* motion to enforce, the district court observed that Spriggs filed a reply to this opposition only after being ordered to do so by the court, and that the reply did not contest the allegations. *Martens,* 194 F.R.D. at 114. The district court failed to mention, however: (1) that, *prior* to class counsel's opposition to the second motion to enforce, (a) class counsel

had included the same allegations in its opposition to the motion to substitute Spriggs & Davis for class counsel; (b) Spriggs had responded to the allegations in his reply to those opposition papers; and (c) the district court had granted the second *pro hac vice* motion; and (2) that the order directing Spriggs to file a reply to class counsel's opposition to the second motion to enforce did not expressly mention the allegations. Hence, it is difficult to see why Spriggs should be faulted for not viewing his reply to class counsel's opposition to the second motion to enforce as an "opportunity" to respond to the charges of past misconduct.

The district court also noted that it had given Spriggs an opportunity to respond to the charges at the outset of the May 15, 2000 hearing. *Id.* The district court failed to mention, however, that it had repeatedly indicated that the subject of that hearing was to be the second motion to enforce. Presented with this surprise "opportunity" to address the charges, Spriggs can hardly be faulted for requesting permission to submit a supplemental brief on the issue. Yet the district court summarily denied this request.

■■ Davis received even less notice than did Spriggs. Neither before nor during the May 15, 2000 hearing did the district court suggest to Davis that his *pro hac vice* status was in jeopardy. Rather, Davis first learned of the revocation of his *pro hac vice* status in the very order that effected it. *Id.* at 113, 116. As for an opportunity to be heard, at the May 15, 2000 hearing, the district court permitted Davis to address the "Rule 11 motion," but not the possible revocation of his *pro hac vice* status. Furthermore, at the end of the hearing, the district court denied Davis's request to submit supplemental briefing on the issue of sanctions.

In view of these procedural defects, we are compelled to vacate the district court's revocation of Spriggs's and Davis's *pro hac vice* status.[11]

## B. Imposition of Rule 11 Sanctions

This Court reviews a district court's imposition of sanctions under Fed. R.Civ.P. 11 for abuse of discretion. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2d Cir.2000). "[A]lthough the decision to impose sanctions is uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion." *Id.* (internal quotation marks omitted).

Rule 11 provides that an attorney makes the following representations each time he or she submits a paper to the court[12]: (1) the paper is not being presented for an improper purpose; (2) the legal claims are warranted under existing law or pursuant to a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (3) the allegations and factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for discovery; and (4) denials of factual contentions are warranted. Fed.R.Civ.P. 11(b). "[A]fter notice and a reasonable opportunity to respond," the court may impose sanctions on the attorneys if, *inter alia*, it determines that any of the above requirements have been violated. Fed.R.Civ.P. 11(c). This Court has interpreted this procedural requirement to mean that "a sanctioned attorney must receive *specific notice of the conduct alleged to be sanctionable* and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *Nuwesra*, 174 F.3d at 92 (internal quotation marks omitted). In determining whether sanctions are warranted, courts may consider, among other things, "whether the person has engaged in similar conduct in other litigation."

**11.** Although we therefore do not reach the merits of the district court's revocation of Spriggs's and Davis's *pro hac vice* status, we note that our holding today that *pro hac vice* counsel are entitled to the same notice and opportunity to be heard as are admitted counsel prior to being sanctioned strongly suggests that the grounds for revoking *pro hac vice* status should not diverge significantly from the grounds for disqualifying admitted counsel. Hence, although it may be appropriate for a district court to deny an application for *pro hac vice* status based solely on an attorney's past misconduct in other courts, *see Rappaport*, 558 F.2d at 90 91, it may be inappropriate to revoke *pro hac vice* status on the basis of past misconduct unless the past misconduct affects counsel's current representation of the class:

[W]ith rare exceptions disqualification has been ordered [in this Circuit] only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage.... But in other kinds of cases, we have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct.... [Therefore,] unless an attorney's conduct tends to taint the underlying trial by disturbing the balance of the presentations in one of the[se] two ways ..., courts should be quite hesitant to disqualify an attorney. *Bd. of Educ. of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979) (internal citations and footnotes omitted).

**12.** The 1993 Amendments, as interpreted by this Court, extended Rule 11 to apply to "presentation" of a paper to the court via oral advocacy in addition to submission of the paper itself. *See O'Brien v. Alexander*, 101 F.3d 1479, 1489–90 (2d Cir.1996).

Fed.R.Civ.P. 11 advisory committee notes (1993 Amendments).

██ If a party wishes to move for Rule 11 sanctions, the Rule 11 motion must "be made *separately* from other motions or requests and shall describe the specific conduct alleged to violate" the rule. Fed. R.Civ.P. 11(c)(1)(A) (emphasis added). The rule also contains a "safe harbor" provision under which the movant must wait twenty-one days after service of the motion on the party against whom it seeks sanctions and may file the motion only if the respondent has not withdrawn or corrected the allegedly offending materials by that time. Fed.R.Civ.P. 11(c)(1)(A). The court may also initiate the sanctions process *sua sponte.* In order to do so, the court must "enter an order describing the specific conduct that appears to violate [the rule] and directing an attorney ... to show cause why it has not violated" Rule 11. Fed.R.Civ.P. 11(c)(1)(B).[13]

██ The district court did not follow these procedures for imposing Rule 11 sanctions on Spriggs and Davis. Neither class counsel nor Smith Barney ever filed a separate motion for Rule 11 sanctions, nor did they afford Spriggs and Davis the required twenty-one-day "safe harbor." Indeed, the district court expressly acknowledged that "class counsel did not file a motion for Rule 11 sanctions." *Martens,* 194 F.R.D. at 114. Nor did the district court issue an order to show cause describing the specific conduct that allegedly violated Rule 11. To be sure, in the court's memorandum and order denying the moving plaintiffs' first motion to enforce, the

court "call[ed] Mr. Spriggs's[s] attention to Rule 11 of the Federal Rules of Civil Procedure." *Martens,* 2000 WL 108831, at *2. It did not do so, however, in the context of its instruction that, if Spriggs re-filed the motion to enforce, he should support all allegations with cognizable evidence. As previously noted, the district court's reference to Rule 11 occurred in the midst of the court's discussion of Spriggs's failure to secure *pro hac vice* status. *See id.* Spriggs could have reasonably interpreted this statement as only putting him on notice that Rule 11 sanctions might be imposed if he continued to sign court papers without obtaining *pro hac vice* status. Therefore, when the district court granted his second motion to appear *pro hac vice,* Spriggs reasonably could have inferred that the condition upon which the district court had predicated its threat of Rule 11 sanctions had been removed. Moreover, even assuming *arguendo* that Spriggs should have understood the district court's reference to Rule 11 sanctions to refer to its finding that the allegations in the motion to enforce lacked evidentiary support, the district court's order did not identify *which* allegations it so adjudged and thus Spriggs did not receive adequate notice of what specific conduct might elicit Rule 11 sanctions.

Davis, meanwhile, was afforded even less notice than was Spriggs that Rule 11 sanctions were imminent. The January 28, 2000 order did not even mention Davis. Hence, although the district court gave Davis an "opportunity" to address the Rule 11 issue during the May 15, 2000

---

**13.** The district court mentioned in its oral imposition of sanctions that it was also sanctioning Spriggs and Davis pursuant to 28 U.S.C. § 1927, which permits sanctions when an attorney's actions multiply the proceedings in ways that are unreasonable and vexatious. In its written order, however, the court referred only to Rule 11. This discrepancy is of no moment, however, because imposition of sanction under section 1927 likewise requires notice and an opportunity to be heard. *See, e.g., Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 936 (2d Cir.1992).

hearing, this was insufficient to satisfy the procedural requirements of Rule 11.

In sum, we find that the district court failed to give "specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed." *Nuwesra*, 174 F.3d at 92 (emphasis and internal quotation marks omitted). Accordingly, we are compelled to vacate the district court's imposition of Rule 11 sanctions on Spriggs and Davis.

## III. Dismissal of the Individual Plaintiffs' Claims for Failure to Prosecute

### A. Failure to Prosecute

 This Court reviews a district court's decision to dismiss an action for failure to prosecute under Fed.R.Civ.P. 41(b) for abuse of discretion. *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir.2001).[14]

 Rule 41(b) provides:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b). A district court also has the power to dismiss for failure to prosecute *sua sponte*. *LeSane*, 239 F.3d at 209.

We have "long recognized that dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness." *Dodson v. Runyon*, 86 F.3d 37, 39 (2d Cir.1996); *see also Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 665 (2d Cir. 1980) ("The remedy [of dismissal for a failure to prosecute] is pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions.") (footnote omitted).

14. As a threshold matter, the individual plaintiffs argue that the district court erred by dismissing their claims for failure to prosecute before deciding whether the claims were arbitrable because, had the court determined that the claims were arbitrable, it would have lacked jurisdiction to dismiss the claims for failure to prosecute. Because we find the district court's Rule 41(b) dismissal was improper in any case, we need not decide this question. However, we note that those courts to have addressed the issue have held that a court which stays an action pending arbitration nevertheless maintains jurisdiction to regulate the parties' conduct by issuing sanctions, including dismissal for failure to prosecute under Rule 41(b); if this is indeed the rule, it would follow *a fortiori* that the district court could do so *before* staying the action and ordering the parties to arbitration. *See Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653–54 (9th Cir.1991) (Rule 41(b) dismissal); *see also LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 902–03 (D.C.Cir.1998) (sanctions under 28 U.S.C. § 1927).

We also note that, prior to its Rule 41(b) dismissal, the district court suggested it would receive briefing and hear argument on the issue of whether the individual plaintiffs' claims were barred by the statute of limitations or laches before it ruled on whether the claims were arbitrable. Generally, however, if the claims are subject to a valid and enforceable arbitration agreement, the arbitrator, not the court, should be deciding the statute of limitations issue. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120–21 (2d Cir.1991). Although the case law is less clear on the laches issue, it also appears that because that issue falls within the general category of "time-bar defenses," *id.* at 121, an arbitrator and not the court should likewise decide the laches issue if the claims are subject to a valid and enforceable arbitration agreement. Therefore, on remand, the district court is instructed that, should it be inclined to consider dismissal for any time-bar defense, it must consider the application of *Shearson* and first decide any pending motions to compel arbitration.

In reviewing the district court's decision to impose this sanction, we consider the following five factors:

(1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 193–94 (2d Cir.1999). Generally, no one factor is dispositive. *Id.* at 194. Although a district court is not required to discuss each of the factors on the record, "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning." *Id.* (internal quotation marks omitted). We assess the district court's dismissal in terms of each of the five factors.

### 1. Duration

In applying this factor, we ask (1) whether the failures to prosecute were those of the plaintiff; and (2) whether these failures were of significant duration. *See Spencer v. Doe,* 139 F.3d 107, 113 (2d Cir.1998). As to the first consideration, the district court determined that the individual plaintiffs allowed fifteen months to elapse from the time that they opted out of the class in March 1998 until they noticed depositions in June 1999. The district court stated that it could "divine no reasonable excuse for this fifteen months of inactivity." *Martens,* 194 F.R.D. at 111.

The individual plaintiffs argue that, for the first eleven months, they were waiting for the Settlement Agreement to become effective. It was reasonable for them to wait to act on their individual claims until the Settlement Agreement became effective, they contend, because if the Settlement Agreement had not become effective, the agreement would have been null and void and all of the parties to the litigation would have been restored to the positions they held before the settlement.[15]

The individual plaintiffs also argue that they did not conduct discovery on their claims during this fifteen-month period for three reasons. First, during this time, there was a pending motion by each of the defendants to dismiss the individual plaintiffs' request for a declaratory judgment that Smith Barney's, NASD's, and NYSE's arbitration policies were unenforceable. The individual plaintiffs contend that it did not make sense to conduct discovery until the court ruled on this issue. And, indeed, Smith Barney voiced the same concerns in its June 17, 1999 letter to the district court: "Smith Barney has no desire to engage in potentially duplicative or needless motion practice, particularly where a brief deferral until such time as this Court resolves defendants' motion to dismiss will simplify and clarify the issues before this Court." Second, the individual plaintiffs maintain that they did not conduct discovery during this time period because they were waiting for this Court to rule, in *Desiderio,* on whether mandatory arbitration violated Title VII. This contention finds support in a letter from counsel for NASD informing the court of the *Desiderio* decision pending before the Second Cir-

---

15. The individual plaintiffs rely on the following language from the Settlement Agreement: "If this Settlement Agreement does not become effective for any reason or is terminated pursuant to Section Fifteen of this Settlement Stipulation, this Settlement Stipulation shall be deemed null and void and of no force or effect and the Parties shall be restored to their respective positions existing prior to the date of this Settlement Stipulation."

cuit and suggesting that "the parties need not speculate as to how the Second Circuit would rule." [16]

Finally, the individual plaintiffs argue that they did not request discovery during this time period because Smith Barney threatened to file a motion to compel arbitration if they attempted to do so. When the individual plaintiffs wrote to the district court that they were contemplating initiating discovery, Smith Barney responded that such a course "leaves [Smith Barney] no choice but to move to compel arbitration, and to take such other action as may be appropriate." True to their promise, as soon as the individual plaintiffs noticed depositions, Smith Barney filed a motion to compel arbitration. Smith Barney did not initiate its motion to compel arbitration until over sixteen months after the individual plaintiffs opted out of the Settlement Agreement. *See Jackson v. City of New York*, 22 F.3d 71, 75 (2d Cir.1994) (finding that the first aspect of the "duration" factor weighed against dismissal where in no instance were "the delays . . . caused solely by the actions of" the plaintiff).

Finding the individual plaintiffs' reasons persuasive, we disagree with the district court's determination that the individual plaintiffs were culpably inactive for fifteen months. Because we find that the individual plaintiffs did not fail to prosecute, we do not need to determine how long any failure to prosecute lasted.

### 2. Notice

The district court did not give the individual plaintiffs express notice that further delays would result in dismissal. Instead, the court gave the individual plaintiffs notice that their claims could be dismissed on the basis of the applicable statute of limitations or pursuant to the doctrine of laches, and instructed the parties to brief those issues. Indeed, the May 15, 2000 decision and order dismissing the claims expressly acknowledged that "the court has not ordered either party to brief the issue of failure to prosecute." *Martens*, 194 F.R.D. at 113. Hence, despite the fact that the failure to prosecute issue was briefly discussed at oral argument on the statute of limitations and laches defenses, we find that the second factor also weighs against dismissal.

### 3. Prejudice

The district court determined that defendants were prejudiced by the "inexcusable delay" because (1) "defendants' ability to effectively present evidence as to their individual claims has been hampered by the passage of such a great length of time, as is presumed in every case, but has actually occurred here in this complex, time consuming and unique class settlement," and (2) "[d]efendants expended significant resources responding to Martens'[s] and Mione's numerous actions to attempt to derail the class settlement." *Id.* at 112.

We find the first of these reasons unpersuasive because, as noted, defendants themselves were responsible for much of the delay. Smith Barney evidenced a desire to delay discovery until the court ruled on its pending motion to dismiss, and threatened to bring a motion to compel arbitration if the individual plaintiffs instituted discovery. Similarly, NASD suggested that the court wait until this Court decided *Desiderio* before moving the case forward. Furthermore, Smith Barney

---

**16.** We note that the district court did not rule on the pending motion to dismiss the declaratory judgment count until December 2, 1999, a few weeks after this Court issued its September 22, 1999 decision in *Desiderio*.

may hardly complain of the delay because it did not move to compel arbitration until sixteen months after the individual plaintiffs opted out. *See Saylor v. Bastedo,* 623 F.2d 230, 239 (2d Cir.1980).

As to the district court's second reason for finding prejudice, we fail to see a connection between the individual plaintiffs' failure to prosecute their claims and the expenses incurred by Smith Barney in responding to the individual plaintiffs' attacks on the class settlement. Therefore, we find that the third factor also weighs against dismissal.

### 4. Balance Between Calendar Congestion and an Opportunity To Be Heard

The individual plaintiffs were not given a substantial opportunity to be heard on the issue of failure to prosecute. The parties were never asked to brief the issue, and only a very brief portion of the oral argument on the statute of limitations and laches issues focused on the failure to prosecute issue. Hence, this factor also weighs against dismissal.

### 5. Consideration of Lesser Sanctions

The extent to which the district court considered lesser sanctions likewise weighs against dismissal. At most, the district court alluded to the possibility of lesser sanctions: "In light of Martens'[s] and Mione's history of behavior in this action, this court now determines that no lesser sanction than dismissal would be appropriate or effective." *Martens,* 194 F.R.D. at 113. The court did not expressly consider, however, whether any remedy short of dismissal would have been effective. This Court has reversed under similar circumstances where the district court did not meaningfully consider alternative sanctions. *See Baffa,* 222 F.3d at 63.

In sum, because each of the five factors weighs against dismissal, we hold that the district court abused its discretion by dismissing the action for failure to prosecute.

### B. Validity of the Arbitration Agreements

■ Relying primarily on this Court's decision in *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.,* 348 F.2d 693 (2d Cir. 1965), the individual plaintiffs also argue that this Court should resolve on appeal the issue of whether their individual claims are subject to valid and enforceable arbitration agreements despite the fact that the district court did not decide this issue. We decline the plaintiffs' invitation.

In *Necchi,* this Court reviewed an order of the district court granting a petition to compel arbitration. We held that the district court erred in granting the petition without first determining whether each of the nine issues on which arbitration was sought fell within the scope of the parties' arbitration agreement. *Id.* at 697. We then continued on to make this determination rather than return it to the district court to pass on in the first instance because (1) the question of arbitrability was "so clear that no useful purpose would be served" by remanding it to the district court, and (2) making the determination on appeal would expedite the litigation. *Id.* We then affirmed the order of the district court as to those issues that we determined were within the scope of the arbitration agreement, and reversed as to those that were not. *Id.* at 697–98.

*Necchi* is inapposite to the instant case. The issues we decided in *Necchi* were directly related to the decision on which we had jurisdiction to review, namely, the district court's order compelling arbitration, and our determination of those issues was necessary to our ultimate decision (i.e., to reverse in part and affirm in part).

In this appeal, however, we have under review the district court's order dismissing the individual plaintiffs' claims for failure to prosecute. The question of those claims' arbitrability simply has no bearing on our review of that order. The plaintiffs' request that we make that determination in the first instance amounts to little more than a suggestion that, once part of a case has reached this court on appeal, we take the opportunity to decide any issue that may conceivably be disputed on remand. This, of course, we decline to do.

It would be particularly unwise in this case because, as defendants argue persuasively, having this Court address the arbitrability issue on appeal could give the individual plaintiffs an unfair advantage because they might otherwise have been unable to appeal the question of arbitrability. If the district court had determined that the individual plaintiffs' claims were subject to valid and enforceable arbitration agreements and compelled arbitration, the individual plaintiffs could not have immediately appealed that decision. *See, e.g., Ermenegildo Zegna Corp. v. Zegna,* 133 F.3d 177, 181 (2d Cir.1998) (stating that, in embedded proceedings where a party seeks relief other than or in addition to an order requiring or prohibiting arbitration, "the party that has unsuccessfully opposed arbitration must await the conclusion of the arbitration before airing its arguments in opposition to arbitration before an appellate court"). This Court has recently condemned allowing unappealable interlocutory issues to hitch a free ride into the Court of Appeals on an order dismissing a case for failure to prosecute:

> [I]f a party who was disappointed by an interlocutory ruling could obtain an appeal of that ruling by simply refusing to prosecute his or her lawsuit, adherence to the merger rule would reward that party for dilatory and bad faith tactics.

Such a result would conflict with the purpose of a Rule 41(b) dismissal for failure to prosecute, which is to penalize dilatoriness and harassment of defendants. These considerations suggest that interlocutory orders should not ordinarily merge with a final judgment dismissing an action for failure to prosecute.

*Shannon,* 186 F.3d at 192 (internal quotation marks, citations and alterations omitted). As a result, this Court applies a "general rule that interlocutory orders do not properly merge with a final judgment dismissing an action for failure to prosecute." *Id.* Thus, while strictly speaking we are not faced with a question of jurisdiction to decide the arbitrability issue, the fact that the individual plaintiffs would not have been able to appeal a decision by the district court finding that the claims were arbitrable militates against this Court addressing that issue on appeal.

## CONCLUSION

We have considered all remaining arguments and find them to be without merit. For the reasons discussed, we vacate the district court's judgment denying the moving plaintiffs' motion to enforce the Settlement Agreement, and remand for further proceedings not inconsistent with this opinion. The moving plaintiffs' motion to reassign the case on remand to another district court judge is denied.

The order revoking the *pro hac vice* status of Spriggs and Davis, and imposing sanctions pursuant to Rule 11, is vacated.

The district court's judgment dismissing the individual plaintiffs' claims for failure to prosecute is likewise vacated.